522 So.2d 1254 (1988)
Claude BRISTER
v.
George WHITFIELD, Administrator, Louisiana Office of Employment Security and TGI Friday's.
No. CA 8359.
Court of Appeal of Louisiana, Fourth Circuit.
March 10, 1988.
David H. Williams, New Orleans Legal Assistance Corp., New Orleans, for plaintiff.
James A. McGraw, Denise A. Nagel, Frank T. Scott, Jr., Bernard J. Francis, Sr., Ollivette E. Mencer, V. Broussard Guillory and Sandra A. Broussard, Office of Employment Sec., Baton Rouge, for defendants.
*1255 Before BARRY, ARMSTRONG and PLOTKIN, JJ.
PLOTKIN, Judge.
Defendant employer appeals a district court judgment favoring the claimant employee, which reversed a denial of unemployment compensation benefits by the Board of Review of the Louisiana Office of Employment Security. We affirm the judgment of the district court.
Claimant Claude Brister was discharged by defendant, Friday's, for "habitual tardiness" after four months of employment. Brister filed for unemployment benefits after he was discharged from a second job that he held at the same time he worked for Friday's. His application for unemployment benefits was denied by the Office of Employment Security, which found he was disqualified because he had been discharged for "misconduct connected with his employment." LSA-R.S. 23:1601(2). That decision was affirmed by both an appeals referee, who conducted a hearing at which both sides presented testimony, and the board of review. The decision of the board was then reversed by the district court, which awarded Brister employment benefits in accordance with LSA-R.S. 23:1472 et seq. The trial court gave no reasons for judgment. The defendants filed this appeal.
The record contains copies of two written reports of tardiness completed by managers of the establishmentone dated August 9, 1985, which was signed by Brister, and one dated July 30, 1985, which was not signed by Brister. The discharge occurred when Brister was again tardy on August 16, 1985. Brister offered two reasons at trial for his tardiness: (1) the fact that he had no car and commuted from his home in New Orleans East to the restaurant in Metairie by bus and (2) the fact that he was trying to hold down two full time jobs simultaneously. During the period the tardies were accrued, claimant was allegedly getting home from the second job at about 4 a.m. and he was expected to report to work at Friday's at 8 a.m. The employer's representative at the hearing, General Manager Randy McKay, who hired Brister, acknowledged that Brister informed him of these circumstances before he was hired. Brister had previously been an employee at the restaurant.
Brister contested the validity of the written tardy report dated July 30, 1985, saying the reason he never signed the slip was that the tardy was "excused" when the manager who completed it learned that Brister had in fact contacted Friday's personnel to let them know he would be late that day. The record contains a letter to the board of review in which Brister stated that he was under the impression that his being tardy would not be a problem so long as he reported the fact that he would be late to Friday's. He stated that his immediate supervisor, the kitchen manager, told him that it was all right for him to be late so long as he called. He also stated that no one had ever said anything negative to him about tardiness or anything else during his 90-day probationary period. None of these contentions of the claimant are seriously contested by the employer in the record.
The appeals referee made the following pertinent findings of fact following the hearing in the case:
The claimant worked for the named employer as a line cook for approximately four months. He was last employed August 16, 1985 at a salary rate of $6.00 per hour.
During the course of the claimant's employment he was excessively late for work. He was counseled on several occasions, both verbally and in writing by his immediate supervisor regarding his continued tardiness. (See Employer Exhibits 1 & 2) His tardiness continued following these warnings and as a result he was discharged.
The referee then made the following findings of law:
The facts presented show the claimant was discharged from his employment because of continued tardiness following warnings. His actions were contrary to the best interest of the employer and his separation occurred under disqualifying *1256 conditions as originally determined by the Agency.
The employment compensation statutes strictly limit judicial review of Board determinations as follows:
In any proceedings under this Section the findings of the Board of Review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.
LSA-R.S. 23:1634.
This court has previously held that the above statute limits judicial review in cases like the one at hand to two essential questions: (1) whether the board's decision was based on sufficient competent evidence and (2) whether the findings of fact justify the decision of the board as a matter of law. Black v. Sumrall, 413 So.2d 252, 252 (La. App. 4th Cir.1982). In this case, although the board's factual findings are based on sufficient competent evidence, the findings of fact do not justify disqualification as a matter of law.
The standard for disqualification from unemployment compensation benefits under LSA-R.S. 23:1601(2) is much higher than the standard for finding that the employer was justified in discharging the employee for his actions. Although the board correctly found that Friday's decision to discharge Brister was justified, it does not necessarily follow that Brister can be disqualified from receipt of unemployment compensation benefits.
In order to disqualify an employee from receipt of unemployment benefits, the record must support a finding that the employee was discharged for "misconduct connected with his employment." This circuit has accepted the following description of the requisite "misconduct":
... an act of willful or wanton disregard of the employer's interest; a deliberate violation of the employer's rules; a disregard of standards of behavior which the employer has a right to expect of his employee; or negligence in such degree or recurrence as to manifest culpability, wrongful interest, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.
Black, 413 So.2d at 253, citing Atkins v. Doyal, 274 So.2d 438, 440 (La.App. 1st Cir. 1973). Additionally, the Louisiana Supreme Court has stated that "[t]he type of behavior which is considered `willful misconduct' is intentional wrong behavior." Charbonnet v. Gerace, 457 So.2d 676, 678 (La.1984). (Emphasis added.)
Because the unemployment insurance statutes are designed to serve a beneficial purpose, the term "misconduct" is construed by the courts of this state in favor of awarding benefits rather than disqualification. Id. Additionally, the employer bears the burden of proving disqualifying "misconduct" because of intentionally wrongful behavior by a preponderance of the evidence. Banks v. Administrator of the Dept. of Employment Security, 393 So.2d 696, 699 (La.1981).
The record in the instant case fails to establish that Brister's tardiness was related in any way to an intentional failure to comply with the employer's rules. The record indicates, in fact, that the employer was aware of the circumstances under which Brister would be working and that he was aware that Brister might be tardy on occasion because of factors beyond his control, i.e. the Greater New Orleans area public transportation system. Under this record, the employer failed to meet his burden of proof.
We find that the claimant's conduct clearly does not fall within the definition of misconduct contemplated by LSA-R.S. 23:1601(2). Claimant therefore is not disqualified from receipt of unemployment insurance. For the above and foregoing reasons, the judgment of the lower court is affirmed.
AFFIRMED.