572 So.2d 295 (1990)
Beverly LEXING, Plaintiff-Appellant,
v.
Bernard J. FRANCIS, Sr., Administrator of the Louisiana Office of Employment Security, and K-Mart Store # 4172, Defendants-Appellees.
No. 21958-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1990.
On Rehearing January 17, 1991.
*296 North Louisiana Legal Assistance Corp. by John L. Genova, Monroe, for plaintiff-appellant.
Louisiana Dept. of Labor Office of Employment Sec. by Sandra A. Broussard, Baton Rouge, for defendants-appellees.
Before MARVIN, C.J., SEXTON, J., and PRICE, J. Pro Tem.
SEXTON, Judge.
Plaintiff-claimant, Beverly Lexing, appeals the district court judgment which affirmed the board of review and the agency, both of which disqualified plaintiff from collecting unemployment benefits because *297 she was terminated for misconduct. We affirm.
Plaintiff was a service desk employee at K-Mart's Louisville Avenue Store in Monroe. She was a full-time employee with a regular weekly schedule which included rotating Sundays. If she was working the day shift, she was required to work from 8:30 a.m. to 5:30 p.m.; if on the evening shift, she was required to work from 1:00 p.m. to 10:00 p.m. Whenever required to work on Sundays, plaintiff was required to work from 11:30 a.m. to 6:30 p.m. At the time of her discharge, plaintiff was earning $5.65 per hour.
On Sunday, November 20, 1988, plaintiff was scheduled to report for work at 11:30 a.m. However, plaintiff punched in on K-Mart's time clock at 11:55 a.m., some 25 minutes late. Despite company policy requiring that any employee late for work call in to advise of that situation, plaintiff made no such call. When confronted upon her arrival, plaintiff offered no excuse or explanation for her tardiness.
A written report was made of the situation and submitted to the store manager who, on Monday, November 21, 1988, at or about the time that plaintiff was punching out for the day, discharged the plaintiff for "tardiness and excessive non-adherence to schedule and time policies."
Plaintiff's application for unemployment benefits was denied by the administrator because she was discharged for misconduct. Plaintiff appealed the disqualification to the board of review, which affirmed the administrator's disposition of her case. An appeal of the board's decision to the district court resulted in another affirmance of the lower bodies' decisions. This appeal followed.
As was demonstrated at the hearing before the board of review, the plaintiff's late arrival the day before her discharge was not her first incident of failing to adhere to company policy regarding company time and clocking in properly. On January 5, 1988, plaintiff was given a warning about her conduct because she took 40 minutes while on break where only 15 minutes was authorized. On June 27, 1988, plaintiff clocked in 10 minutes before she was supposed to have done so, then spent 20 minutes in the employee lounge, reporting to her station 10 minutes late. Again, she was warned that future incidents of such a nature could result in her dismissal. Thus, after the store manager was advised that plaintiff was almost one-half hour late for work without notice on November 20, 1988, he decided to terminate her.
Plaintiff argues that her employer failed to adequately demonstrate the facts underlying her dismissal and that said facts, even if proven, do not constitute "misconduct" within the meaning of Louisiana's employment compensation law. LSA-R.S. 23:1601(2).
The Louisiana employment security law is remedial in nature and as such should be interpreted by the court to extend its benefits as far as possible within the bounds imposed by express legislative restrictions. Parker v. Gerace, 354 So.2d 1022 (La.1978); Dunn v. Gerace, 516 So.2d 1180 (La.App. 2d Cir.1987).
The scope of judicial review in unemployment compensation cases is outlined in LSA-R.S. 23:1634. Since there has been no allegation of fraud in the instant case, judicial review of the findings of the board of review is limited to (1) whether the facts found by the board are supported by competent evidence produced at the hearings and (2) whether such facts, as a matter of law, justify the action taken. Charbonnet v. Gerace, 457 So.2d 676 (La.1984); Dunn v. Gerace, supra; Jenkins v. Blache, 471 So.2d 909 (La.App. 2d Cir.1985).
LSA-R.S. 23:1601(2) provides that an individual shall be disqualified from benefits if the administrator finds that the employee has been discharged for misconduct connected with his employment. Misconduct sufficient to disqualify a claimant from unemployment benefits results from an act of willful or wanton disregard of the employer's interest, from a deliberate violation of the employer's rules, or from a direct disregard of standards of behavior which the employer has a right to expect from his employees. Braggs v. Administrator, Louisiana Office of Employment Security, 535 So.2d 1169 (La.App. 2d Cir. *298 1988); Ball v. Lockwood, 440 So.2d 932 (La.App. 2d Cir.1983).
Misconduct must be determined on the facts of the individual case. Ball v. Lockwood, supra; Sampson v. Administrator, Louisiana Office of Employment Security, 439 So.2d 458 (La.App. 2d Cir.1983), writ denied, 443 So.2d 596 (La.1983). The issue is primarily a factual one to be determined by the administrator and the board of review. Banks v. Administrator of Department of Employment Security, 393 So.2d 696 (La.1981).
The employer has the burden of establishing the disqualifying misconduct of the employee by a preponderance of the evidence, Braggs v. Administrator, Louisiana Office of Employment Security, supra; Neal v. Whiteside, 476 So.2d 911 (La. App. 2d Cir.1985), and that the discharge resulted from disqualifying conduct. Banks v. Administrator of Department of Employment Security, supra.
Repeated acts of tardiness are sufficient misconduct to deny an individual unemployment compensation benefits. Braggs, supra; Rawls v. Brown, 165 So.2d 18 (La.App. 2d Cir.1964); Persley v. Brown, 160 So.2d 437 (La.App. 2d Cir. 1964).
In the instant case, K-Mart introduced evidence that plaintiff had had ten "corrective interviews" in the two and one-half years preceding her discharge. Additionally, K-Mart's personnel manager testified regarding the three incidents giving rise to her discharge.
Plaintiff argues that K-Mart has attempted to cumulate other incidents of alleged misconduct in order to buttress what would not, standing alone, suffice to establish misconduct the day before her discharge, that is, an isolated incident of tardiness.
Plaintiff's argument is essentially that several incidents of unrelated conduct all combined to wrongly add up to one incident of alleged misconduct. However, we note that all of the incidents of record demonstrate plaintiff's lack of regard for her employer's interest in having its personnel at work and on the job during business hours. Whether it consisted of taking more than the allotted amount of time for a break, clocking in early but not immediately reporting to her work station, or arriving late for work without any notice or excuse, all three incidents involve plaintiff's lack of concern for her employer's business interests by not being at her station when she was supposed to be there.
Importantly, plaintiff was warned and counseled following each of the earlier incidents. She understood or should have understood that the penalty for continuing to disregard company policy regarding attention to duty could be termination of her employment.
A case which we consider to be analogous to the instant case is Black v. Sumrall, 413 So.2d 252 (La.App. 4th Cir.1982). In Black, plaintiff was a production line employee for a beverage company. On the day of her discharge, she clocked in, then went to the ladies room, ostensibly to change clothes. Her supervisor located her and told her to come out, but she continued to talk with a fellow employee. When she did exit, her manager told her that she was holding up production and that, if she didn't want to work, she should clock out. The evidence indicated that plaintiff had been warned about this type of behavior several times. There ensued an argument which culminated with plaintiff's discharge:
The plaintiff's conduct displayed a definite disregard of the standards of behavior which her employer had a right to expect. The employer's interest was necessarily to get the production line going. Plaintiff jeopardized her employment by intentionally holding up the production line. This action on her part was a willful disregard of her employer's interest.
413 So.2d at 253.
In Cole v. Doyal, 195 So.2d 759 (La.App. 3rd Cir.1967), plaintiff was a production line employee in a lumber mill. He had repeatedly let his work pile up, disrupting production, and had, on numerous occasions, exceeded the allotted time for coffee breaks. The Cole court affirmed plaintiff's disqualification, noting that
disqualifying conduct may, as here, consist of wanton negligence or neglectful *299 failure to perform duties of such recurrence or degree that they are considered tantamount to the deliberate or intentional conduct in willful disregard of the employer's interest which by statute constitutes disqualifying misconduct.
195 So.2d at 760-1.
Although Black and Cole may be distinguished to the extent that they involved production line employees, the general principle in those cases applies in the instant case: an employer has a right to expect that its employee will be at work when scheduled to work and will be functioning at the assigned tasks while he or she is "on the clock."
Our review of the record in the instant case discloses that plaintiff's employer adequately proved the facts underlying her dismissal and that the administrator, the board of review, and the district court decisions were not clearly wrong in concluding that plaintiff is disqualified from receiving unemployment compensation benefits based on her misconduct. Accordingly, the decisions below are affirmed, with all costs to be paid by plaintiff-appellant.
AFFIRMED.
Before MARVIN, C.J., SEXTON, NORRIS and BROWN, JJ., and PRICE, J. Pro Tem.

ON REHEARING
PER CURIAM.
In application for rehearing, the claimant correctly asserts that she may not be assessed with costs in a judicial review proceeding unless it is determined that the proceeding for judicial review was instituted or continued frivolously. LSA-R.S. 23:1692. There being no indication that the proceedings in this court were instituted or continued frivolously, we determine that our original assessment of costs to claimant was in error. The assessment of those costs against the claimant/appellant is reversed and set aside.