GOTHARD, Judge.
This appeal is from a judgment affirming the decision of the board of review of the Office of Employment Security, denying the plaintiff’s eligibility for unemployment benefits.
James Joseph, Jr., a driver for Chemical Leaman Tank Lines, Inc. was discharged by the company on April 4,1988 because of *463 excessive tardiness. The Southern Conference Tank Line Grievance Committee, a joint management/union committee, affirmed the dismissal. Joseph was later held to be disqualified from receiving unemployment compensation benefits by an Administrative Law Judge of the OES, Department of Employment and Training, whose finding was affirmed by the OES board of review and the district court. The plaintiff then filed this appeal.
LSA-R.S. 23:1634 sets out the scope of judicial review of unemployment compensation cases and provides that, “... the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.” As fraud has not been alleged, this court must decide whether the facts found by the board are supported by competent evidence produced at the hearings and whether such facts, as a matter of law, justify the action taken.
The decision of the administrative law judge, dated April 28, 1989, contains the following findings of fact, based upon a hearing at which Joseph and the current terminal manager for Chemical Leaman was present:
During his employment, the claimant was frequently tardy to work. He received verbal and written letters from the employer according to their progressive discipline procedures. On his last day of employment, the claimant was tardy at arriving to the terminal. As it neared time for the claimant to report to the terminal, the dispatcher called him at home. The claimant alleges he informed the dispatcher that he was sick, having just gotten up. Another driver was sent to the claimant’s dispatch. When the claimant arrived at work, he was sent to help the other driver.
On July 17, 1986, the claimant was discharged for not reporting to work on time. This discharge was reduced to a two week suspension without pay. On June 16, 1987, the claimant received a written warning for tardiness. On August 11, 1987, the claimant received a written warning concerning failure to report to a mandatory safety meeting. On August 14, 1987, the claimant received a three day suspension for tardiness.
On November 12, 1987, the claimant was again tardy to work. On November 13, 1987, he was terminated from the employment. This termination was rescinded due to a dispatch error and reduced to a three day suspension. In all the warning letters, the claimant was informed that any future offenses would result in disciplinary action up to and including discharge. After the last incident of April 4, 1988,-the claimant was discharged from the employment.
On June 29, 1989 the board of review mailed its decision affirming the administrative law judge’s decision. Joseph petitioned for judicial review. The district judge took the matter under advisement and, based upon the evidence of record, ruled on October 25, 1990 that the board’s decision was “proper under the law and fully supported by competent evidence.”
The appellant admits in brief that he had been disciplined six times between May 5, 1986 and April 4, 1988. He bases his defense on an assertion that Chemical Leaman violated the disciplinary rules of the collective bargaining agreement between the tank line and the union.[1] He complains that the contract provides that no warning shall remain in effect for more than six months and that the company was racially discriminatory in using earlier warnings as a basis for discharge.
A copy of the section of the contract provisions for discharge or suspension was submitted into evidence and reads as follows, in pertinent part:
In all cases where an employee is unable to report for work at the regular starting time, for any reason, he shall immediately notify the Supervisor (Dispatcher, Foreman or Terminal Manager). Failing to so notify the Supervisor he shall not be reinstated upon his return to *464 work unless a reasonable explanation is furnished to the Company. The first violation of this Article shall result in a warning notice to the employee. On the second such violation of this Article the employee may be disciplined or discharged. Habitual absenteeism will be grounds for discharge after proper notice to the employee and the Union.
[[Image here]]
The warning notice as herein provided shall not remain in effect for a period of more than six (6) months from date of said warning notice.
William B. Boggs, terminal manager, testified that the company follows the disciplinary procedure set out in the union contract:
... We have progressive disciplinary action. We start, like I said with verbal warnings. We have letters. Then we have three day suspensions, all of which Mr. Joseph received_
When asked why the discharge on November 13, 1987, was reduced to a three day suspension, Boggs explained:
We met with a member of the union and talked with Mr. Joseph and decided to go with the progressive discharge, the 3-day suspension. We don’t like to discharge people when it’s not necessary because good truck drivers ... are hard to find today.
All the disciplinary letters were entered into evidence; we note that the letter rescinding the November, 1987 discharge stated that any future offense of tardiness could result in discharge. That warning fell within the six months prior to discharge and was preceded by three warnings during the six months before November, 1987.
Joseph explained his tardiness as often being due to car trouble, which happened to occur in a “wilderness” between his home and the plant and made it impossible for him to call in. On one occasion he had to take his sick father to the doctor. He said that the April 4, 1988 incident happened because he awakened late with diarrhea and could not call in from the bathroom; however, he answered the dispatcher’s telephone call at the time he was due at the terminal. He offered no witnesses to buttress his explanations.
We are convinced that the record supports the findings of fact of the administrative law judge and that the claimant’s discharge was for cause and in accordance with the disciplinary procedures of the union contract.
The criteria for misconduct that would disqualify an employee from unemployment benefits is set out in Charbonnet v. Gerace, 457 So.2d 676, 678 (La.1984):
For a claimant to be disqualified from benefits because of “misconduct connected with his employment” under La.R.S. 23:1601(2), the “misconduct” must have resulted from willful or wanton disregard of the employer’s interest, from a deliberate violation of the employer’s rules, or from a direct disregard of standards of behavior which the employer has the right to expect from his employees. Pilgram Manor Nursing Home, Inc. v. Gerace, 337 So.2d 660 (La.App. 3rd Cir.1976)....
Chemical Leaman is a service company, which must perform its duties on time in order to keep its customers. This point was plainly made to Joseph in each warning letter. Furthermore, the union contract spells out very clearly the employee’s responsibility to notify the terminal at once if he is unable to report on time, and it outlines the resulting penalties for failing to do so. Repeated acts of tardiness are sufficient misconduct to deny unemployment compensation benefits to a claimant. Braggs v. Adm’r, La. Office of Emp. Sec., 535 So.2d 1169 (La.App. 2nd Cir.1988); Lexing v. Francis, 572 So.2d 295 (La.App. 2nd Cir.1990).
Our review of the record indicates that Joseph’s misconduct fulfills the criteria set out in Charbonnet v. Gerace, supra, and we affirm the judgment below.
AFFIRMED.

. Local 270 of the General Truck Drivers, Chauffeurs, Warehousemen & Helpers.