| ^ARMSTRONG, Judge.
Plaintiff Rene Holtry appeals the dismissal of his petition for judicial review of a decision of the Louisiana Office of Employment Security (OES). The issue for review is whether *1336 OES erred in denying plaintiff unemployment compensation based on disqualifying misconduct. For the following reasons, we affirm.
Plaintiff was hired as a full-time employee by Turner Marine, Inc. (Turner Marine), on April 14, 1992. He was discharged on October 12, 1992 on grounds of excessive tardiness. He subsequently filed a claim for unemployment compensation with OES. In his claim, plaintiff admitted that he was discharged for tardiness. OES denied plaintiffs claim and he timely filed for administrative review.
Hearing on plaintiffs disputed claim for unemployment compensation was held before an administrative law judge (ALJ) on November 8, 1992. Plaintiff appeared on his own behalf, while Turner Marine was represented by John McCullough, the company’s industrial relations director. No other witnesses testified.
McCullough introduced three written documents detailing plaintiffs tardiness. The first document was a counseling form, dated June 22, 1992, in which plaintiff received a written warning about tardiness. The document was signed by plaintiff and by a supervisor, Stephen Richardson (Richardson). The document set forth the following description of the conduct complained of:
Since Mr. Holtry hired in with Turner Marine (4-14-92) he has been tardy 4 times anywhere from ½ hr. or more. On many occasions he has been 5 to 15 minutes late. Mr. Holtry has been verbally warned on each occasion.
LThe second document was a June 22, 1992 letter from McCullough to Richardson, in which McCullough informed Richardson as follows concerning the tardiness of plaintiff and another employee:
After recording the tardiness and absentee records for both of the aforementioned employees, I noticed that both men are experiencing problems with getting to work on time or getting to work at all. What is most disturbing is the fact that all of the absences or tardiness occur on Fridays and Mondays.
Without getting too descriptive I believe that these men may have a problem. Since payday is on a Thursday, it seems strange that both men cannot get to work on Friday or when they do they are tardy. If the weekends are too much for them to get to work on Mondays, then perhaps a change is in order.
I hope that you will counsel these men using the proper documentation and advise them that they are in jeopardy of being replaced by men who are interested in coming to work.
The third document was a September 11, 1992 letter from McCullough to plaintiff, in which McCullough stated:
Since your hire date of April 14, to the present date you have been late nine (9) times. You have been counseled regarding this matter yet the problem has not improved.
Please be advised that should you be tardy again through the end of the year you will be terminated. Your tardiness interrupts your supervisors, who must take the time in order to re-explain the work orders for the day. Your co-workers cannot depend on you and therefore must take on additional work which you should be doing.
I hope that you will take this very seriously.
McCullough testified that plaintiff was tardy eleven times, and that he was warned, as documénted in the letters and counseling form. McCullough admitted that the three documents were the only record he had of plaintiffs tardiness.
According to McCullough, the last incident of tardiness occurred on October 12, 1992, when Holtry arrived about a half hour late for work. After plaintiff completed his shift, McCullough notified plaintiff that he was terminated. When the ALJ asked McCullough what he told plaintiff when he discharged *1337 him, McCullough replied: “That he had been absent or ... tardiness (sic) 11 times and we had talked about it before and he had promised to correct the problem and had not, and I didn’t have any other choice.”
| ^McCullough stated that every employee had problems with tardiness from time to time, but that plaintiff was punching in a half an hour late. McCullough testified that problems arose when plaintiff arrived half an hour late, because plaintiff would have to find his foreman, and his foreman would then have to waste additional time instructing plaintiff about his assignments.
Plaintiff testified that he was not late for work on October 12. According to plaintiff, the incident which precipitated his discharge occurred on Saturday, October 10. Plaintiff stated that he arrived about a half hour late for a 6 p.m. to 6 a.m. shift on October 10. Plaintiff testified, however, that he was not scheduled to work the shift. By the time Turner Marine called to inform him to work the shift, it was too late for him to make it to work on time. McCullough stated that plaintiff was penalized for his tardiness on October 12, not for his tardiness at the unscheduled shift on Saturday, October 10.
Plaintiffs testimony as to his tardiness was unclear and sometimes conflicting. On one occasion, plaintiff stated that he could not remember being tardy other than the four times documented in the June 22,1992 counseling form. 'On another occasion, plaintiff admitted receiving a copy of McCullough’s letter of September 11, 1992 documenting nine incidents of tardiness, but testified that the incidents were only by a matter of five to ten minutes. Plaintiff stated that he may have been absent once or twice on Mondays and Fridays, but that it did not happen regularly as stated in McCullough’s letter of June 22, 1992.
Although some of plaintiffs testimony indicates that he was not excessively tardy, he also admitted that McCullough had spoken with him about tardiness, and that he promised McCullough he would start arriving on time. Plaintiff also asserted that his tardiness was caused by a passing train which sometimes blocked access to the Turner Marine facilities. Plaintiff testified that his immediate boss, Donald Holmes, talked to him about tardiness and informed him that though the train was not plaintiffs fault, Turner Marine would not tolerate tardiness.
When the ALJ asked McCullough about the effect of the train on tardiness, McCullough stated: “It happens from time to time, but every employee that works [there] | including myself and, and 23 people that work in the building have to be ... at work at 8 o’clock and have to cross that same railroad track and don’t have any problem getting to work.”
In affirming OES’s conclusion that plaintiff had been discharged for disqualifying misconduct the ALJ made the following findings of fact:
During the course of the claimants employment he was late for work on several occasions. The claimant was cautioned by the employer regarding his continued tardiness. Both verbal and written warnings were issued to the claimant. The claimants tardiness continued following his being issued the warnings and as a consequence of his continued tardiness following warnings, he was terminated.
The scope of judicial review of decisions of the Board is set forth in La.R.S. 23:1634, which provides:
In any proceeding under this Section the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.
See also Pope v. Whitfield, 524 So.2d 108 (La.App. 4th Cir.1988); Washington v. Summit, 457 So.2d 50 (La.App. 4th Cir.1984).
The statutory basis for denial of unemployment compensation on grounds of misconduct is La.R.S. 23:1601, which provides in pertinent part:
An individual shall be disqualified for benefits:
* * * * * *
*1338 (2) (a) If the administrator finds that he has been discharged by a base period or subsequent employer for misconduct connected with his employment. Misconduct means mismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives or property of others, dishonesty, wrongdoing, violation of a law, or violation of a policy or rule adopted to insure orderly work or the safety of others.
The employer bears the burden of proving disqualifying misconduct. Charbonnet v. Gerace, 457 So.2d 676 (La.1984); Banks v. Administrator of the Dept. of Employment Security, 393 So.2d 696 (La.1981).
In Charbonnet, supra, the Louisiana Supreme Court set forth the following standard for determining misconduct under La.R.S. 23:1601:
| s[T]he “misconduct” must have resulted from willful or wanton disregard of the employer’s interest, from deliberate violation of the employer’s rules, or from a direct disregard of standards of behavior which the employer has the right to expect from his employees. The type of behavior which is considered “willful misconduct” is intentional wrong behavior. Because of the beneficial purpose of unemployment compensation, the term “misconduct” should be construed so as to favor the awarding of benefits rather than disqualification.
Id., 457 So.2d at 678 (citations omitted); see also e.g. Banks, supra; Brister v. Whitfield, 522 So.2d 1254, 1256 (La.App. 4th Cir.1988).
It is well established that repeated acts of tardiness are sufficient misconduct to deny an individual unemployment compensation benefits. Joseph v. Whitfield, 580 So.2d 462, 464 (La.App. 5th Cir.1991), writ den., 585 So.2d 573 (La.1991); Lexing v. Francis, 572 So.2d 295, 298 (La.App. 2nd Cir.1990); White v. Gerace, 372 So.2d 756, 758 (La.App. 4th Cir.1979).[1]
In Brister, supra, we concluded that an employer did not meet its burden of proving disqualifying misconduct, where the record demonstrated that the employer was aware that the claimant would occasionally be late for work due to his reliance on the public transportation system. The instant case is similar to Brister in that plaintiff established that he relied on the public transportation system. However, unlike the claimant in Brister, plaintiff in the instant case does not allege that his tardiness was caused by the public transportation system.
Instead, plaintiff asserts that his tardiness was caused by a train. In his brief on appeal, plaintiff asserts that many of Turner Miarine’s employees also experienced difficulty making it to work on time because of the train, and that he was unfairly singled out for punishment. McCullough testified at the hearing on this matter that plaintiff was the only employee who complained that his tardiness was caused by the train. Plaintiff did not | (¡dispute this testimony below, or otherwise indicate that his fellow employees were detained by the train.
As mentioned above, it is well established that repeated tardiness constitutes disqualifying misconduct. The record shows that plaintiff was warned on at least three occasions by three different supervisors that his tardiness might result in dismissal. Plaintiff admitted that on one of these occasions he told McCullough he would start arriving on time. McCullough’s testimony also established that plaintiffs tardiness was disruptive of the work environment at Turner Marine. Taken as a whole, the record demonstrates a deliberate violation of the employer’s rules *1339 and a willful disregard of the employer’s interest. The record supports OES’s factual conclusion that plaintiff was tardy, and that his tardiness was intentional behavior of the sort which constitutes disqualifying misconduct under La.R.S. 23:1601(2). Under the circumstances, plaintiff is not entitled to unemployment compensation.
For the foregoing reasons, the judgment of OES and of the trial court is affirmed.

AFFIRMED.

. See also Braggs v. Administrator, Louisiana Office of Employment Security, 535 So.2d 1169, 1171 (La.App. 2nd Cir.1988); Wilkerson v. State, Office of Employment Security, 439 So.2d 506, 509 (La.App. 1st Cir.1983); Rawls v. Brown, 165 So.2d 18, 19 (La.App. 2nd Cir.1964); Persley v. Brown, 160 So.2d 437, 438 (La.App. 2nd Cir. 1964); and Chapman v. Div. of Emp. Sec., 104 So.2d 201, 204 (La.App. 2nd Cir.1958).
See contra Brister v. Whitfield, 522 So.2d 1254 (La.App. 4th Cir.1988), discussed infra, and Vernon v. Seitz, 399 So.2d 723 (La.App. 1st Cir. 1981). Both of these cases involved unique circumstances not present in the instant case.