719 So.2d 674 (1998)
GLAZER STEEL CORPORATION
v.
ADMINISTRATOR, OFFICE OF EMPLOYMENT SECURITY OF the STATE OF LOUISIANA and Louis Washington.
No. 98-CA-0441.
Court of Appeal of Louisiana, Fourth Circuit.
September 30, 1998.
Rehearing Denied October 30, 1998.
*675 Rowena T. Jones, New Orleans Legal Assistant Corp., New Orleans, for Appellant Louis Washington.
J. Jerome Burden, Louisiana Department of Labor, Office of Employment Security, Baton Rouge, for Appellant Louisiana Department of Labor, Office of Employment Security.
Before SCHOTT, C.J., and JONES and WALTZER, JJ.
WALTZER, Judge.
The District Court reversed the decision of the Department of Labor, Board of Review for the Office of Employment Security, and reinstated the rulings of the Louisiana Department of Labor, New Orleans Claims Office and the Appeals Tribunal for the Office of Employment Security, denying Louis Washington unemployment compensation benefits. The Board of Review as well as Louis Washington appeal this ruling.

BACKGROUND FACTS AND PROCEDURAL HISTORY
Louis Washington was employed with Glazer Steel Corp. as a tractor trailer driver in 1991. In that capacity, Washington was paid a fixed hourly wage plus incentive payments based, in part, on deliveries at outlying places. Pursuant to federal law, all of Glazer's tractor trailer drivers must carry a valid Interstate Commerce Commission ("ICC") card, which is evidence that the employee is physically fit to drive.
In order to promote a safe work place and to comply with regulatory requirements, Glazer has a written and promulgated substance abuse policy. This substance abuse program permits random employee testing, as well as testing pursuant to federal or state regulations. One such federal regulation requires drug testing of drivers before ICC cards are initially provided or subsequently renewed.
At the time Washington started employment at Glazer he was given the Substance Abuse Program booklet which Glazer had in effect.[1] Washington knew that Glazer prohibited drug use by its employees and that, if found to be on drugs, he could be terminated.[2] On 20 March 1995 Washington was scheduled to take a drug urinalysis test according to company policy and to renew his ICC card. At the medical office of Houston, Roy, Faust & Erwin, Washington provided a urinalysis sample in a cup while he was alone in a sanitary, clean bathroom. He gave the specimen and cup to a nurse, and labeled the sealing tape. He observed the nurse place *676 the labeled sealing tape over the specimen and signed a chain of custody form.[3] The urinalysis was undertaken by Roche Biomedical Laboratories. Washington's initial drug test result was positive for cocaine. Pursuant to Glazer's documented drug policy, this initial result was subsequently confirmed by gas chromatography-mass spectroscopy. Dr. Arthur Axelrod, a medical review officer of Houston, Roy, assigned to this case, contacted Washington by phone and informed him of the positive drug result. Dr. Axelrod asked whether Washington was taking any prescription medication which might explain the positive test result for cocaine. Washington did not offer any explanation.
The Plant Manager of Glazer terminated Washington pursuant to the substance abuse policy. Washington's last day of employment was 27 March 1995. Washington applied for unemployment compensation benefits at the Louisiana Department of Labor, New Orleans Claims Office. When Washington was disqualified from unemployment compensation benefits by the Agency he appealed this initial ruling to the Appeals Tribunal for the Office of Employment Security. The issue on appeal to the Appeals Tribunal was framed as follows:
The claimant was discharged for testing positive for illegal drugs in accordance with a well established promulgated company drug testing policy R.S. 23:1601(10) or the claimant was dis [sic] from employment because his salary increased from $14,500 to $29,500 and the employer wanted to hire a temporary at a lesser salary. R.S. 23:1601(2)
The Administrative Law Judge (ALJ) conducted a hearing on 30 June 1995. At the hearing the Plant Manager and Washington testified. All parties were represented by counsel. Washington presented no witnesses other than himself. Washington denied drug use. He admitted that there was a written substance abuse policy in effect at Glazer and that he was notified of the test results. As to the drug test itself, he testified that the conditions for a safe drug test were met, and that he signed the chain of custody consent form. Washington insisted that his termination for violation of the substance abuse policy was merely a pretext in order that Glazer could hire temporary employees in order to cut costs.
Glazer presented at the hearing the positive drug test results, Glazer's substance abuse policy and a sworn affidavit of Dr. Axelrod.[4] The Plant Manager testified that he found it personally difficult to fire Washington because of the nature of their relationship, but that he was bound to do so by company policy. Glazer's representative testified further that no temporary drivers were hired to replace Washington, and that hiring *677 of temporary drivers, if actually undertaken, is more costly in the long run.
Washington presented his own testimony and no documentary evidence. He testified that despite his positive drug test he had received an ICC card. Washington never presented the card, nor was the card offered into evidence by Washington's attorney. Washington's attorney objected to the introduction of Dr. Axelrod's affidavit on the basis that it was hearsay which prevented him from cross-examining the MRO. The Appellate Tribunal affirmed the Agency's disqualification of Washington's unemployment benefits under LSA-R.S.13:1601 (10).
Washington appealed the adverse ruling to the Department of Labor, Board of Review. The Board of Review reversed the ALJ's disqualification and allowed benefits to Washington. While three members of the Board reversed on the basis that "... the claimant was discharged from his employment because of an allegedly positive drug screen test. The information as provided in the record is considered by the Board as hearsay. The MRO was not present at the hearing. Without substantiating testimony from the MRO, the test as submitted cannot be proven to be correct," the remaining two members of the Board concurred with the majority opinion, but disagreed with the reasons offered by the majority, and based its ruling on the fact that crucial documentation submitted to the Board was illegible.
Glazer sought judicial review of the Board's decision in the District Court.[5] The District Court ordered the matter remanded to the ALJ in order that additional evidence be taken. Although the District Court Judge invited the parties to take a supervisory writ to this Court, no writ was ever filed.
On remand, the testimony of Dr. Arthur Axelrod was offered and legible documents were produced in front of the ALJ. Washington produced no evidence, in fact, at the first scheduled hearing Washington failed to appear because "he had confused the date," and was out of town on a work assignment. The remand hearing was then continued to another date and then held open for testimony of a purported expert Washington wished to present to the Tribunal. No additional witness was ever presented and the ALJ ruled once more that Washington be disqualified from the receipt of unemployment compensation benefits. This decision was appealed once more to the Board of Review. The opinion of the Board of Review neither affirmed nor reversed the ALJ's decision but recommended that "the original decision of the Board be sustained."
On 19 December 1997 the District Court reversed the judgment of the Board of Review. The trial judge found the Board's decision arbitrary, reinstating the decision of the ALJ disqualifying Washington from receipt of unemployment compensation benefits.

STANDARD OF REVIEW
Courts reviewing findings of the Board of Review determine whether those findings are "supported by sufficient evidence" in the record, in the absence of fraud. Courts may always review the record for errors of law. LSA-R.S.23:1634 (B).

DISCUSSION
Washington argues that a) the records documenting the drug screen constitute incompetent hearsay evidence and b) that Glazer failed to prove the requirements of LSA-R.S.23:1601 (10) by a preponderance of the evidence.
Appellant is correct that Glazer has the burden of proving Washington's misconduct, disqualifying him from eligibility for unemployment benefits. Holtry v. Truly, 94-1348 (La.App. 4 Cir. 12/15/94); 647 So.2d 1335, 1338.[6]
LSA-R.S.23:1601 (10) provides in pertinent part

*678 DISQUALIFICATIONS FOR BENEFITS.
An individual shall be disqualified for benefits:
* * * * * *
(10)(a) If the administrator finds that he has been discharged by a base period or subsequent employer for the use of illegal drugs. For purposes of this Paragraph, "misconduct" shall include discharge for either on or off the job use of a nonprescribed controlled dangerous substance as defined in 21 U.S.C. 812 Schedules I,II,III,IV, and V. In order to support disqualification for drug use under this provision, the employer must prove the employee's use of the controlled dangerous substance only by the preponderance of the evidence. In meeting this burden, the only results of employer-administered tests that shall be considered admissible evidence are those that are the result of the testing for drug usage done by the employer pursuant to a written and promulgated substance abuse rule or policy established by the employer.
* * * * * *
c) All sample collection and testing for drags under this Chapter shall be performed in accordance with the following conditions:
(i) The collection of samples shall be performed under reasonable sanitary conditions.
(ii) Samples shall be collected and tested with due regard to the privacy of the individual being tested, and in a manner reasonably calculated to prevent substitution or interference with the collection or testing of reliable samples.
(iii) Sample collection shall be documented, and the documentation procedures shall include:
(aa) Labeling of samples so as reasonably to preclude the erroneous identification of test results: and
(bb) An opportunity for the employee to provide notification of any information which he considers relevant to the test, including identification of currently or recently used prescription or nonprescription drugs, or other relevant medical information.
(iv) Sample collection, storage, and transportation to the place of testing shall be performed so as reasonably to preclude the probability of sample contamination or adulteration; and
(v) Sample testing shall conform to scientifically accepted analytical methods and procedures. Testing shall include verification or confirmation of any positive test result by gas chromatography, gas chromatography-mass spectroscopy, or other comparable reliable analytical method, before the result of any test may be used as a basis for any disqualification under La. R.S. 23:1601(10).
The record is replete with testimony and documentary evidence that the drug screen was conducted in compliance with the numerous requirements of this law. Not only did Dr. Axelrod testify that the test complied with the law, Washington himself confirmed that Glazer's representatives followed the company's procedure, patterned after the State statute, in obtaining the specimen. Significantly, Dr. Axelrod testified that a second test, a gas chromatography test confirmed the initial positive result and that Washington had the opportunity to give any explanation of prescribed medicine use which might have distorted the drug screen in this case. Washington gave no such explanation, but insists that the drug test and its results were only a pretext for the company to terminate and replace him with more cost efficient temporary employees.
There was no evidence adduced by Washington to prove the "pretext." To the contrary, the Plant Manager testified that the only reason he fired Washington was the violation of the substance abuse policy. In fact, after Washington had been fired, Glazer was unable to make planned deliveries. Glazer had no substitute drivers. "The truck did not move," the Plant Manager testified and "I didn't have anyone to drive it for a while." Glazer got behind in deliveries. The Plant Manager also testified that other drivers of tractor trailers in the same position were making $ 33,000 to $45,000 per year, and that after the requisite years spent on *679 the job, Washington would have been eligible to reach that salary, which was prior to his termination in the $ 29,500 range heading towards the top. Washington testified that he "figured" he was fired for pretextual reasons. The ALJ who heard and saw the witnesses was in the best position to weigh their credibility. He rejected Washington's testimony.
Next, Washington complains that the Court should not consider Dr. Axelrod's testimony because Glazer offered this testimony only after remand by the District Court. He asserts that Glazer got an impermissible "second bite at the apple." However, LSA-R.S. 23:1634(B) provides in part: "No additional evidence shall be received by the court, but the court may order additional evidence to be taken before the board of review." Additionally, the District Court remanded the record to allow the parties to rectify concerns which the Board of Review expressed about the completeness and legibility of the record. Washington failed to seek review of the remand order, and his belated argument that the District Judge abused its discretion when it remanded to complete the record, has no merit.
Finally, Washington contends courts reviewing administrative decisions, are precluded from considering all the evidence in the record. He argues that the testimony of Dr. Axelrod that the drug screen was properly conducted is nothing but inadmissible hearsay. However, in administrative hearings, the usual rules of evidence do not apply and hearsay is generally admissible. LSA-R.S.23:1631; Major v. Cintas/Red Stick, 94-713 (La.App. 3 Cir. 12/6/95); 665 So.2d 153, writ denied 96-0081, 669 So.2d 402. Jurisprudence recognizes that hearsay evidence is not competent to overcome an employee's direct, contradictory testimony. Credit v. Whitfield, 488 So.2d 1064 (La.App. 2 Cir.1986); .
Washington did not present any evidence to contradict the testimony of Dr. Axelrod or the Plant Manager. He merely testified that he never used drugs. He never presented evidence that the test he had consented to, complete with a chain of custody consent, was conducted in an improper manner. To the contrary, his own testimony showed that the test was properly conducted and in accordance with law. The record shows that Washington never attacked the integrity of the drug test in any way. He admitted the existence of a drug policy with which he was familiar and to which he had consented to adhere. Washington offered no evidence that the medical records or other documentary evidence were not maintained in the usual course of business by Dr. Axelrod's clinic and contracting laboratory, or that they were unreliable.

CONCLUSION
Our judicial review must be confined to questions of law. In the absence of fraud, the findings of fact of the Appeals Tribunal are conclusive if supported by sufficient evidence. The ALJ was the only one who heard live testimony and had the opportunity to observe the witnesses in order to evaluate their credibility.
We agree with the District Court that the Board of Review erroneously disregarded evidence of Washington's misconduct and erroneously concluded that Glazer had failed to prove his disqualification for unemployment compensation benefits.
Accordingly, we affirm the decision of the District Court. The decision of the Appeal Tribunal is reinstated. The claimant is disqualified from receipt of unemployment compensation.
AFFIRMED.
NOTES
[1] Washington signed a Drug Test Consent Form on 19 June 1992 agreeing to drug testing at "random," "periodic," [for] "reasonable cause," [and] "post accident." The drug test consent form also provides that "... the results of the test will be forwarded by the laboratory only to the Medical Review Officer (MRO) signing the report, and that the MRO will report only to the carrier and to [Washington] whether test results were positive or negative." The form also provides for a reasonable opportunity to confer with the MRO before a positive result is reported to the company.
[2] Inter alia, the company prohibited "... the use, abuse, presence in the body or reporting to work under the influence ... of ... illegal and unauthorized drugs, controlled substances, alcoholic beverages, or drug related paraphernalia by employees..." (Emphasis supplied.)
[3] The Drug Testing Custody & Control Form had the following donor certification: I certify that I provided my urine specimen to the collector; that the specimen bottle was sealed with a tamper-proof seal in my presence; and that the information provided on this form and on the label affixed to the specimen bottle is correct. Should the results of the laboratory test for the specimen identified by this form be confirmed positive, the Medical Review Officer will contact you to ask about prescriptions and over the counter medications you may have taken. Therefore, you want to make a list of these medications as a "memory jogger." THIS LIST IS NOT NECESSARY. If you choose to make a list, do so either on a separate piece of paper or on the back of your copy of this form....
[4] When Washington appealed his initial denial of benefits to the Appeals Tribunal presided over by the ALJ, he and his attorney were advised in writing ... "that the parties should be prepared to present evidence at the hearing to support their case." Evidence includes sworn testimony by the parties and their witnesses as well as written statements and other documents related to the case. The Administrative Law Judge will give more weight to certain evidence. The Administrative Law Judge has been trained on how to decide which evidence is more reliable. The sworn testimony given at the hearing by the parties and the witnesses will be given the most weight. Other testimony such as hearsay testimony, ("The supervisor told me that John would not follow his instructions") and written statements, will not be given as much weight because the person who made the statement cannot be questioned to determine his sincerity and ability to perceive the event they spoke or wrote about. Documentary evidence will also be given more or less weight than the other evidence depending on how the Administrative Law Judge sees it.

The parties must arrange for any necessary witnesses to be present at the hearing....Witnesses are only necessary if there might be some disagreement about the facts in the case. (emphasis supplied)
[5] This review is limited to administrative records, transcripts of the administrative hearing and the court may remand the case to the Appeals Tribunal for additional evidence before rendering a judgment.
[6] The Instructions contained on the Notice to Appear for Hearing of the ALJ proceedings note: The burden of proof in a voluntary leaving issue rests upon the claimant. The burden of proof in a discharge case rests upon the employer.