JjLEON A. CANNIZZARO, JR., Judge.
This case involves a claim for unemployment compensation benefits. The plaintiff, New Orleans Private Patrol Services, Inc. (“Private Patrol”), is appealing a judgment granting unemployment compensation benefits to its former employee, Lisa M. Shorts.
FACTS
Ms. Shorts had worked for Private Patrol for almost two years when her employment as a human resources assistant was terminated. After she lost her job, Ms. Shorts applied for unemployment compensation benefits, and Private Patrol contested her application.
A hearing was held before an administrative law judge to determine whether Ms. Shorts was qualified for unemployment compensation benefits. Ms. Shorts was not present at the hearing.[1] Private Patrol was represented at the hearing by | ^Vivian Thompson, its personnel manager, Karen Lorenz, its office manager, and Debbi Hoffmann, an executive assistant.
Ms. Thompson testified that she was Ms. Shorts’ supervisor for over a year and that Ms. Shorts “understood the job and did it well.” Ms. Thompson also said that although there had been no change in Ms. Shorts’ job duties, “everything started to fall off’ about three months before Ms. Shorts was terminated. According to Ms. Thompson, Ms. Shorts developed a lackadaisical approach to her work, she arrived at work late on several occasions, and she did not perform her job as thoroughly as she had in the past.
Ms. Thompson said that she and Ms. Lorenz met with Ms. Shorts to address her failing job performance. Ms. Thompson testified that she and Ms. Lorenz had asked Ms. Shorts to tell them what she thought her job duties were, and Ms. Shorts was unable or unwilling to do so. Ms. Thompson said that at the meeting she and Ms. Lorenz simply wanted to identify the problems that Ms. Shorts was having with her job. Ms. Thompson, however, described the meeting as “disappointing.” She testified that Ms. Shorts had an obstinate attitude, stared out the window, and mumbled under her breath. According to Ms. Thompson, when Ms. Shorts failed to participate in the meeting, she was put on notice that her job performance had to improve.
Ms. Thompson said that after the meeting, Ms. Shorts’ job performance did not improve. Part of Ms. Shorts’ job was to give Ms. Lorenz, the office manager, a daily report. Although Ms. Shorts had furnished this report on a daily basis [awithout being prompted in the past, Ms. Thompson testified that Ms. Lorenz had to ask for the report repeatedly after Ms. Shorts’ job performance began to decline.
Ms. Thompson further testified that approximately a month after Ms. Shorts had been put on notice that her job performance was unsatisfactory, she was counseled about her tardiness in reporting for work. Ms. Thompson said that the counseling was precipitated when Ms. Shorts called the office manager on a Monday morning to say that she would be a few minutes late but did not arrive at work until two and a half hours after she should have. Accord *75 ing to Ms. Thompson’s testimony, Ms. Shorts was then placed on probation for ninety days.
Ms. Thompson also testified that Ms. Shorts took a company raincoat and gave it to her sister, who worked for Private Patrol as a security officer, without properly documenting the transaction. Ms. Thompson said that had Ms. Lorenz not been leaving the office in the rain the day that Ms. Shorts gave her sister the raincoat, the company would never have known that Ms. Shorts distributed a company raincoat without the proper payment and documentation. The transgression was revealed when Ms. Lorenz asked the security officer on duty at the company’s front desk for something to use to cover some documents she was taking home so that they would not get wet in the rain. The security officer on duty happened to be Ms. Shorts’ sister, who gave Ms. Lorenz a bag from which she had just removed a new company raincoat Ms. Thompson testified that the next morning Ms. Lorenz had asked Ms. Shorts whether she had given the raincoat to her sister without documenting the transaction and receiving the $7.00 purchase |4price. Ms. Shorts allegedly told Ms. Lorenz that she did not document the transaction or require her sister to pay for the raincoat, because her sister was going to return the raincoat.[2] Ms. Thompson said that Ms. Shorts was then counseled regarding her error in failing to document the raincoat transaction.
Ms. Thompson further stated that while Ms. Shorts was on vacation, Ms. Thompson looked in Ms. Shorts’ desk drawer in search of a lunch menu. While she was searching for the menu, Ms. Thompson found a certified piece of mail that had been returned, because Ms. Shorts had failed to put the proper postage on the envelope. Ms. Thompson went into the office of Ms. Hoffman, an executive assistant at the company, and while Ms. Hoffman served as a witness, Ms. Thompson opened the piece of mail and discovered that it contained a letter to a former employee advising him of his benefits under COBRA[3].
Ms. Thompson said that she talked with Ms. Lorenz after the piece of mail was opened, and they decided to terminate Ms. Shorts’ employment. Ms. Shorts had mailed COBRA forms to former employees in the past and was aware of the urgency of mailing the forms timely. Ms. Shorts’ failure to properly handle the mail containing the COBRA forms was, according to Ms. Thompson, “the straw that broke the camel’s back.” A letter terminating Ms. Shorts’ employment was |shand delivered to her house the day after she was schedule to return from her vacation.
Ms. Thompson also testified that a short time after Ms. Shorts was placed on probation, she requested vacation time. Because Ms. Shorts had earned several vacation days, she was authorized to take the vacation that she had requested. Ms. Thompson further testified that' Ms. Shorts telephoned Ms. Lorenz at midnight the day before Ms. Shorts was to return to work from her vacation. Ms. Shorts called to report that she could not return to work *76 the next day, because she had been on a cruise ship in Mexico and was stranded because of a hurricane.
After Ms. Thompson testified, Ms. Lorenz testified at the agency hearing. Ms. Lorenz reiterated that Ms. Shorts had been late coming to work and that Ms. Shorts had been placed on probation due to her continuing tardiness. Additionally, Ms. Lorenz corroborated Ms. Thompson’s testimony regarding both Ms. Shorts’ failure to document the raincoat transaction with her sister and Ms. Shorts’ declining job performance.
Ms. Lorenz also testified about the piece of certified mail that had been found in Ms. Shorts’ desk. Ms. Lorenz said that when the mail was originally returned to the company for insufficient postage, she had taken it to Ms. Shorts, advised her that she had failed to put postage on the envelope, and asked her to mail the item again. Over two months later, Ms. Shorts had still not mailed the letter with the proper postage.
|fiMs. Hoffman then testified. She said that she had witnessed Ms. Thompson’s opening of the piece of certified mail that contained documents relating to a former employee’s rights under COBRA.
A copy of the letter terminating Ms. Shorts’ employment with Private Patrol was made part of the record before the administrative law judge. The letter read as follows:
I regret to inform you that as a result of your unsatisfactory performance, we have decided to terminate your employment at NOPP Headquarters effective immediately.
As you are aware, we have had numerous conversations over the last several weeks regarding your performance in the capacity of personnel assistant. In those meetings, we addressed numerous issues which had to be re-addressed on far too many occasions.
Additionally, in reviewing your request for vacation dated June 28, 2003, you clearly state that your vacation would conclude on Thursday, July 17, 2003. Therefore, we expected you to be in the office at 9:00 AM on Friday, July 18, 2003. You failed to report for work.
We are glad to offer you a position as security officer in the field. If you are interested, please contact John Dicken, Personnel Manager, to arrange this placement.
The letter was signed by Ms. Thompson.
The administrative law judge rendered a decision finding that Ms. Shorts was disqualified from receiving unemployment compensation benefits. In his decision, he said that “the claimant was discharged for failing to perform her duties as expected due to careless negligence and after repeated, recent warnings. Therefore, it must be determined that the claimant was discharged due to misconduct connected with the employment.” The determination of the 17administrative law judge that Ms. Shorts was not entitled to unemployment compensation benefits was appealed by Ms. Shorts to the Board of Review of the Louisiana Department of Labor.
The Board reversed the decision of the administrative law judge and held that Ms. Shorts had been improperly disqualified from receiving unemployment compensation benefits. The Board’s ruling stated that it found no misconduct connected with Ms. Shorts’ termination from her employment and unanimously concluded that Ms. Shorts should not be denied unemployment compensation benefits. The Board referred to a written statement submitted to the Board by Ms. Shorts in which she “indicated that the office manager harassed her for no apparent reason.” In the written statement, Ms. Shorts also dis *77 puted much of the testimony given at the hearing before the administrative law judge.
After the Board found that Ms. Shorts was eligible to receive unemployment compensation benefits, Private Patrol filed suit in the trial court against both Ms. Shorts and the Louisiana Department of Labor. Private Patrol sought a judicial review of the Board’s decision. After a hearing, the trial court rendered a judgment upholding the decision of the Board of Review. In her reasons for judgment, the trial court judge stated that she adopted the findings of fact and reasons for judgment set forth in the memorandum filed into the court record by the Department of Labor. Private Patrol is now appealing the trial court judgment.
DISCUSSION
Scope of Review
La. R.S. 23:1634(B) establishes the standard of judicial review to be used in connection with unemployment compensation determinations by the Board of Review. That statute provides that “the findings of the board of review as to the |sfacts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.” In Dupre v. State Board of Review, 2003-0153, p. 5 (La.App. 4 Cir. 9/24/03), 857 So.2d 1135, 1138, writ denied, 2003-2934 (La.1/9/04), 862 So.2d 991, cert. denied sub nom., Dupre v. Fredlund, 541 U.S. 1065, 124 S.Ct. 2394, 158 L.Ed.2d 967 (2004), this Court stated that “[jjudieial review of unemployment proceedings does not entail the weighing of evidence, drawing of inferences, re-evaluation of evidence, or substituting the views of the court for those of the board of review as to the correctness of facts.”
In Holmes v. Forster, 2000-0632, p. 2 (La.App. 4 Cir. 2/14/01), 781 So.2d 656, 659, this Court stated that there are two principles for judicial review of a decision of the Board of Review relating to a claim for unemployment compensation benefits. First, the review is limited to a determination of whether the Board’s findings of fact are supported by sufficient, competent evidence. Second, a reviewing court must consider whether the facts, as a matter of law, justify the action taken by the Board.
Disqualification for Misconduct
La. R.S. 23:1601(2)(a) provides in relevant part:
An individual shall be disqualified for benefits:
[[Image here]]
(2)(a) If the administrator finds that he has been discharged ... for misconduct connected with his employment. Misconduct means mismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives or property of others, dishonesty, wrongdoing, violation of a law, or violation of a policy or rule adopted to insure orderly work or the safety of others.
|gThe Louisiana Supreme Court has defined “misconduct”, as used in La. R.S. 23:1601(2)(a). In Horns v. Brown, 243 La. 936, 942, 148 So.2d 607, 609 (1963), quoting 48 Am.Jur., § 38, p. 541, the Supreme Court initially defined the term “misconduct” as “an act of wanton or wilful [sic] disregard of the employer’s interest, a deliberate violation of the employer’s rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design.” In Banks v. Administrator, Department of Employment Security of the State of Louisiana, 393 So.2d 696, 699 (La.1981), the Supreme *78 Court said that the term “misconduct,” as used in LSA-R.S. 23:1601(2)(a), connotes intentional wrongdoing and concluded that “an employee can be unsatisfactory to the employer without being guilty of disqualifying misconduct.” In Charbonnet v. Gerace, 457 So.2d 676, 678 (La.1984), the Supreme Court found that the requisite “misconduct” for purposes of disqualification from unemployment compensation benefits must result from “willful or wanton disregard of the employer’s interest, from a deliberate violation of the employer’s rules, or from a direct disregard of standards of behavior which the employer has the right to expect from his employees.”
The Supreme Court further stated in Charbonnet that the term “misconduct” must be construed in favor of awarding benefits rather than disqualification from benefits. Id. Additionally, in Harris v. Houston, 97-2847, p. 6 (La.App. 4 Cir. 11/4/98), 722 So.2d 1042, 1045, this Court stated that “[i]n cases of alleged disqualifying employee misconduct, the burden of proof as to such misconduct is |inupon the employer and the misconduct must be proven by a preponderance of the evidence.”
Assignments of Error
Private Patrol raises three assignments of error. First, Private Patrol contends that the Board abused its discretion by reversing the findings of fact of the administrative law judge. Second, Private Patrol asserts that the Board and the trial court relied upon incompetent evidence when they relied upon Ms. Shorts’ written statement of facts, because the written statement was inadmissible hearsay. In its third assignment of error, Private Patrol raises the alternative argument that the case should have been remanded by the Board to the administrative law judge so that testimony could have been taken from Ms. Shorts. Private Patrol claims that because the Board relied on Ms. Shorts’ allegations in her written statement to reverse the ruling of the administrative law judge, Private Patrol was deprived of its right to confront and cross-examine Ms. Shorts on her claims that she was harassed by the office manager.
We find that Private Patrol’s third assignment of error has merit. La. R.S. 23:1634(B) provides that “[n]o additional evidence shall be received by the court, but the court may order additional evidence to be taken before the board of review, and the board of review may, after hearing such additional evidence, modify its findings of fact or conclusions.” In the instant case the Board relied on the written statement of Ms. Shorts in finding that Private Patrol had not proved by a preponderance of the evidence that Ms. Shorts’ employment was terminated as a result of misconduct within the meaning of La. R.S. 23:1601(2)(a).
Inin Holmes v. Forster, 2000-0632 (La.App. 4 Cir. 2/14/01), 781 So.2d 656, this Court discussed the use of hearsay evidence in an unemployment compensation case. This Court stated:
Although hearsay evidence is admissible in an administrative hearing, it does not necessarily qualify as competent evidence and thus may not be considered by an appellate court to determine whether the factual findings of the Board are supported by sufficient competent evidence, as required by LSA-R.S. 23:1634.
2000-0632, p. 3, 781 So.2d 656, 659. We are, thus, precluded from considering the written statement of Ms. Shorts in determining whether the Board’s decision in the instant case is supported by sufficient evidence.
In Glazer Steel Corp. v. Administrator, Office of Employment Security, 98-0441, *79 p. 9 (La.App. 4 Cir. 9/30/98), 719 So.2d 674, 679, this Court also said that “[jjurispru-dence recognizes that hearsay evidence is not competent to overcome an employee’s direct, contradictory testimony.” This is true even though the usual rules of evidence do not apply in administrative hearings and hearsay is generally admissible.
Based on the record in the instant case, Ms. Shorts’ written statement is directly contradictory to the testimony of Ms. Thompson and Ms. Lorenz. Ms. Shorts states that she never received any complaints regarding her work, that it was routine for the security officers to be given “loaner” raincoats when they needed them, and that she was never placed on probation. In the absence of Ms. Shorts’ testimony taken under oath, regarding the allegations made in her written statement, and Private Patrol’s opportunity to cross-examine her, the judgment of the trial court should be vacated, and the case should be remanded so that additional testimony can be taken.
11?Because Ms. Shorts did not receive timely notice of the hearing before the administrative law judge, she was deprived of the right to confront Private Patrol’s witnesses. Likewise, because the Board accepted Ms. Shorts written statement in lieu of her testimony, Private Patrol was deprived of its right to have Ms. Shorts cross-examined on the allegations that she made in her written statement. While it would have been appropriate for the Board to remand the matter to the administrative law judge when it became apparent that Ms. Shorts had not received timely notice of the hearing before him, the Board chose instead to review the administrative law judge’s decision in light of Ms. Shorts’ written statement.
We believe that additional testimony must be taken in this case, because a determination by the finder of fact regarding Ms. Shorts’ statements is dispositive of Ms. Shorts’ qualification to receive unemployment compensation. Accordingly, we vacate the judgment of the trial court and remand this case to the Board. The Board is to proceed, in accordance with its rules and procedures, to obtain Ms. Shorts’ testimony and the testimony of any other party whose testimony is needed, with each party to be given the opportunity to have the other party cross-examined. Because we have determined that the case should be remanded so that testimony from Ms. Shorts can be given and cross-examined, Private Patrol’s other assignments of error need not be addressed.
CONCLUSION
This case is remanded to the Board for the purpose of obtaining Ms. Shorts’ testimony and giving Private Patrol the opportunity to have that testimony cross-examined. After all required testimony has been received, the Board shall either | ^reinstate its original decision or modify its findings of facts and conclusions, if the Board determines that a modification is warranted.
JUDGMENT VACATED AND REMANDED.

. She claimed that she did not receive timely notice of the hearing and that she did not learn of the hearing until after it had been held. We note that the postmark on the envelope that was submitted by Ms. Shorts shows a date of September 18, 2003; the hearing was held on September 17, 2003.

. Ms. Shorts’ position regarding the undocumented raincoat transaction was that she had loaned her sister the raincoat, because it was raining that day.

. Ms. Thompson testified that under federal law, an employer has only a specified number of days from an employee's separation date to notify the employee of his rights under COBRA, which is an acronym for the Consolidated Omnibus Budget Reconciliation Act, a federal law relating to, among other things, the continuation of employee benefits after employment ends.