ARMSTRONG, Judge.
The Office of Employment Security, “Agency”, appeals the trial court’s judg *636 ment finding that Delphine Price was not disqualified from receiving unemployment compensation benefits. We affirm the trial court’s judgment.
Claimant, Delphine Price, was hired by United Cerebral Palsy, “UCP”, as an instructor on March 9, 1981. Delphine Price’s last day of work was April 4, 1983, when she went home ill roughly 30 minutes into her shift. On April 5, 6, 8, 11, and 12 of 1983, either Delphine Price or her daughter, Vernetta Jackson, telephoned UCP to report that Ms. Price was too ill to come to work.
UCP wrote to Ms. Price on April 12, 1983 to ask her to “present a physician’s letter” to her supervisor by April 25, 1983. Ms. Price forwarded a response to UCP by certified mail affixed to which was a note from Dr. Okpalobi, an obstetrician and gynecologist. Dr. Okpalobi prescribed three days’ rest for Ms. Price and advised her to seek psychiatric treatment. Following this advice Ms. Price had her daughter bring her to the Chartres Mental Health Center, “CMHC”, on April 18, 1983, where she underwent an eligibility screening or “intake” interview that was part of the facility’s admissions procedure. She was not seen by a psychiatrist that day.
UCP sent a second certified letter to Ms. Price on April 20, 1983 informing her that her documentation was inadequate and that she had until April 25th to submit additional medical information. By April 25th Ms. Price had visited CMHC twice yet she had not met with a psychiatrist. Ms. Price telephoned UCP on April 25th to explain why she would not be able to submit the necessary medical reports on that day. UCP fired Ms. Price three days later.
Ms. Price filed for unemployment compensation benefits but was deemed ineligible. She pursued her claim before an Administrative Law Judge, the Louisiana Board of Review, and before the trial court. The trial court remanded the case to the Agency “for further consideration of the issue of whether, in light of her medical condition, the claimant had sufficient justification for failure to provide adequate medical- documentation of her absence.” On remand, the Board of Review found no justification. The trial court reversed and the Agency appealed.
On appeal, the Agency argues that chronic absences of an employee from work without notice and without permission shows willful disregard of the employer’s interest amounting to misconduct. Gunderson v. Libbey Glass, 412 So.2d 656 (La.App. 2d Cir.1982). Moreover, failure to report to work and failure to cooperate with the employer are grounds for disqualification from receiving unemployment compensation benefits under the Employment Security Act. Poynot v. Administrator of the Division of Employment Security of the Department of Labor, 162 So.2d 724 (La.App. 4th Cir.1964).
The Agency claims that Ms. Price failed to properly notify the employer of her absences. Additionally, Ms. Price failed to cooperate with UCP’s request to submit proper medical evidence as to such absences. Accordingly, Ms. Price should be disqualified from receiving unemployment compensation benefits.
Only willful or wanton misbehavior will justify denial of unemployment compensation benefits. The Louisiana Supreme Court has construed the statutory term “misconduct” as follows:
For a claimant to be disqualified from benefits because of ‘misconduct connected with his employment’ under La.R.S. 23:1601(2), the ‘misconduct’ must have resulted from willful or wanton disregard of the employer’s interest, from a deliberate violation of the employer’s rules, or from a direct disregard of standards of behavior which the employer has the right to expect from his employees.
Charbonnet v. Gerace, 457 So.2d 676, 678 (La.1984) (emphasis added). In short, the misconduct must involve intentional wrongdoing. Banks v. Administrator of Department of Employment Security of Louisiana, 393 So.2d 696, 699 (La.1981). The Fourth Circuit announced in Thomas v. Blache, 488 So.2d 1282, 1284 (La.App. 4th Cir.1986), that “the element of intentional wrongdoing must be present for an em *637 ployee to be guilty of disqualifying misconduct.” See also: Popularas v. Department of Labor, Office of Employment Security, 488 So.2d 1242, 1244 (La.App. 4th Cir.1986).
Ms. Price argues that she made adequate efforts to notify her employer of her illness and the record reveals that her conduct involved nothing which would constitute intentional wrongdoing. UCP documented that it received word from Ms. Price or her daughter the day after Ms. Price fell ill and nearly every day thereafter until April 12th when UCP’s Executive Director demanded written documentation. Ms. Price’s April 15th response, affixed to her doctor’s statement, reveals no desire to evade the rules:
I received your notice and I thoroughly understand the significance of what you need.
[Ejnclosed you will find the necessary paper work you required.
Ms. Price tried to secure a more complete diagnosis of her condition which she later described as something “like ... a nervous breakdown.” Procedural delays at CMHC, a publicly supported facility, made it virtually impossible for Ms. Price to secure a medical report by April 25th, the deadline that she was asked to meet. Ms. Price telephoned UCP on April 25, 1983 to explain the cause of the delay. Unable to afford the speedy services of a private doctor, Ms. Price was fired from her job.
Ms. Price’s efforts to prove her illness to her employer can hardly be characterized as “the type of premeditated and seriously improper behavior which constitutes the ‘misconduct’ of a sufficiently grave nature so as to invoke the penal provisions disqualifying an unemployed worker....” Turner v. Brown, 134 So.2d 384, 386 (La.App. 3rd Cir.1961). Ms. Price’s efforts— her phone calls, letters, and medical appointments — prove that she desired to uphold rather than to eschew her employer’s sick leave policy. A technical violation of a company rule or policy is not disqualifying per se, for it is the law rather than the rule that sets the standard for disqualification from receiving benefits. Robinson v. Brown, 129 So.2d 45, 46 (La.App. 2d Cir.1961). An employee’s “nondeliberate failure to precisely follow established rules and procedures, although giving the employer reason for terminating the employee for the employer’s own purposes, does not constitute the kind of willful and deliberate misconduct that will disqualify the employee from receiving unemployment benefits as provided by law.” Simmons v. Gerace, 377 So.2d 407, 410 (La.App. 2d Cir.1979); See also: Thomas v. Blache, supra; Brewington v. Administrator of Office of Employment Security, 497 So.2d 418 (La.App. 3d Cir.1986).
The Agency’s reliance on Gunderson v. Libbey Glass, supra and Poynot v. Administrator of the Division of Employment Security, supra is misplaced. These cases support rather than undermine Ms. Price’s claim for benefits. The claimant in Gun-derson was discharged for excessive absenteeism. She notified her employer of each mishap that kept her away from work. The court noted that “a chronic absence ... without notice and without permission” amounts to misconduct; however, the court ultimately affirmed the trial' court’s decision to award unemployment compensation. In so doing the Gunderson court reasoned:
While this employer was fully justified in viewing the series of absences as excessive and in terminating the claimant for that reason, this does not result in an automatic classification of the excessive absenteeism as disqualifying misconduct. In fact, since there was no evidence of a willful or wanton disregard by the employee of the employer’s interest, we agree with the trial judge that the excessive absenteeism did not constitute misconduct under La.R.S. 23:1601.
Gunderson, supra 412 So.2d at 659 (emphasis added). The record in this case is similarly devoid of evidence that would indicate Ms. Price had a “willful or wanton disregard” for UCP’s rules and policies.
Poynot is easily distinguished from Ms. Price’s situation. In that case the claimant simply left work one day to go on vacation; moreover, he “testified at one point that he did not tell anyone he was going to take his *638 vacation early.” Upholding the denial of benefits, the court concluded that “the plaintiff sought to fix the time of his vacation to suit his own personal whims, without any agreement or even notification to his employer.”
In leaving the work place Ms. Price was not motivated by selfish whims. When asked how she felt when she first left UCP, Ms. Price testified:
A. I, I couldn’t — I didn't have any long thoughts. I could not articulate as I use (sic) to. I think slower. I was a robust person at one time, and when you work with handicapped you have to have your fullest strength. You have to have everything in order to give them all of you, not part of you
Q. Did you know exactly what was wrong with you that day you left work? A. I felt like I was having a nervous breakdown. I felt totally lost. I didn’t think I had anybody to help me.
Ms. Price’s testimony regarding her health is competent evidence despite the absence of medical confirmation. Guillory v. Administrator of the Office of Employment Security, 525 So.2d 1197, 1198 (La.App. 5th Cir.1988). Given the evidence in the record, the trial court properly concluded that Ms. Price’s circumstances precluded strict compliance with UCP’s sick leave policy and that her failure to do so did not constitute disqualifying misconduct.
We agree with Ms. Price that Prenell v. Brown, 130 So.2d 520 (La.App. 3d Cir.1961) and the cases summarized therein more closely resemble the facts of the instant case than do the cases cited by UCP. The court in Prenell wrote:
It has been repeatedly held by the appellate courts of this State that the Louisiana Employment Security Law falls within a class of social and economic legislation which is remedial in its nature, and, as such, it should be so interpreted by the courts as to extend its benefits as far as possible within the bounds imposed by expressed legislative restrictions. Lacombe v. Sharp, supra [99 So.2d 387 (La.App. 2 Cir.1957)]; Sewell v. Sharp, supra [102 So.2d 259 (La.App. 2 Cir. 1958) ].
Prenell, supra at 523. It appears from the record that Ms. Price did her best to follow her employer’s rules and policies. Through no fault of her own she was unable to secure the information that her employer demanded from her. Consistent with policy, the statute should be liberally construed in favor of Ms. Price who is seeking to obtain unemployment benefits under the Act.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED