IzWICKER, Judge.
Anthony J. Jones (Jones), a former employee of Pellerin Milnor Corporation (Pelle-rin), appeals the trial court’s affirmance of a decision by the Board of Review for the Office of Employment Security denying him unemployment benefits. We affirm.
Jones specifies the following error on appeal:
The District Court erred in finding that an eight-year employee whose shift was recently changed to the graveyard shift was disqualified for unemployment compensation benefits when the only competent evidence, other than hearsay, was that he was tardy one time, which does not rise to the level of disqualifying intentional misconduct.
Jones was discharged for tardiness and/or absenteeism without a valid excuse and after being warned prior to his dismissal. He claimed he was not discharged for misconduct connected with the employment. He appealed the disqualification to an administrative law judge (ALJ). That hearing was held June 24, 1994. Benefits were again denied. Jones then appealed to the Board of Review. The Board affirmed the decision of the referee but amended it in part to show the effective date of disqualification to be *1295 May 5, 1994. The Board adopted the ALJ’s findings. He next appealed to the district court. The trial court affirmed the Board.
The ALJ stated the following pertinent findings of fact:
|3The named employer manufactures industrial laundry machine systems. The claimant worked for the employer for about eight years. At the time of his separation from work, he was an A machine operator earning $11.63 per hour.
For about the first two years of his employment, the claimant worked the first shift. The claimant then worked for about six years on the second shift, which runs from 3:30 p.m. to 11:00 p.m. The claimant worked for about the last two months of his employment on the third shift from 10:30 p.m. to around 7:00 a.m. The claimant’s work week began around 10:30 p.m. on Sunday night and ended on a Friday morning. The claimant was experiencing some difficulty in adjusting to the third shift schedule.
The employer had documented some incidents of absenteeism and one incident of tardiness between February 1993 and April 1994.
On April 27, 1994, the claimant was given a warning. Three supervisors — David Uliscni, Frank Mamola and Brad Ralph— attended this warning session with the claimant. The claimant was told that any further absences would lead to further disciplinary action, including possible discharge.
The claimant took a nap before going to work on May 2,1994. The claimant began his nap around 7:00 to 7:30 p.m. The claimant awakened from the nap around 10:38 p.m. and called the employer. He informed Mr. Uliscni that he had taken a nap and would be in shortly. The claimant arrived at work around 11:10 p.m.
The employer reviewed the situation, attorneys were consulted, and the director of human resources approved the discharge. The claimant last worked for the employer around 6:30 a.m. on May 5, 1994. The claimant was given his separation notice, which stated that he was discharged for “excessive absenteeism.”
* * * * iis *
[t]he evidence clearly shows that the claimant was tardy by about 40 minutes on the shift that began May 2, 1994, and ended the morning of May 3,1994. Although the claimant called the employer that he would be reporting late, the call was not made until after the shift had already begun. Furthermore, the reason for tardiness was not particularly valid. The firsthand evidence presented at the hearing substantiates only one warning given to the claimant regarding his attendance, but that one warning occurred only a few days prior to the final incident of tardiness. The one warning really addressed the problem of absenteeism rather than tardiness, but it suggests that the employer had expressed its concern to the claimant regarding his attendance ...
HEARING
At the hearing Jones was unrepresented by counsel. Jones and Sidney J. LaCoste, Jr. were the only witnesses.
LaCoste testified he is the Director of Human Resources for Pellerin. Jones had worked for the company eight years. At the time of his separation Jones was a machinist who worked the 10:30 p.m. to 7:00 a.m. shift five days a week, beginning Sunday night. This work was subject to overtime. He last worked May 5,1994 when he was discharged.
Jones was discharged for excessive absenteeism and failure to notify his employer he Uwould be absent or tardy. The final incident occurred May 2, 1994 after Jones had been told to call in and tell his employer he would be absent or late. On that date Jones did not report to work. After his shift had begun, he called to say he was late and would come in. This unexcused absence was the final factor leading to his discharge. He reported to work that date a little after 11:00 but his shift began at 10:30. LaCoste did not speak to him about this incident.
LaCoste also testified that he never per-sonaEy spoke to Jones in the past regarding his attendance. He identified documents *1296 which were contained in the employee’s personnel file. These documents noted excused and unexcused absences.
LaCoste was asked by the company’s counsel to summarize the number of unexcused absences as represented in the file. He testified he was the custodian of these records but that he did not prepare these documents. The people who prepared the documents were not called to testify. LaCoste stated there were six unexcused absences occurring 1/29/94; 2/11/94; 3/25/94; 4/8/94; 4/20/94; and 4/24/94. He also stated the documents reflect episodes of tardiness in 1994 and that the documents reflect Jones was warned about absenteeism.
- He testified the company advises employees the employee must call in if late or unable to come to work. Employees are informed of this procedure through group supervisors’ meetings. If a person does not show up, a machine is not being used. The company may have to stop production or call in a back up worker who would be paid overtime. It is critical that the company be informed in order to make other arrangements since the rest of the factory depends on parts from this section for its production.
Jones testified he had been employed as an “A” machine operator for three-and-one-half-years. The last date he worked was May 4, 1994. David Uliscni and Frank Mamola told him he was discharged.
He admitted he had spoken to Uliscni and Mamola April 27,1994. He admitted he was warned that date about absenteeism but stated this was his first warning. He testified he called the following Monday to say he was running late. He overslept and was approximately a half-hour late. The supervisor agreed to his continuing to work. He continued to work until May 5, 1994, and was surprised when he was terminated that day.
IsHe stated that on May 2, 1994 he was having problems with this shift. He had only been on it approximately two months. Prior to this time he had been working the shift from 3:30 p.m. to 11:00 p.m. He had been on this shift for six years.
He stated he explained to Uliscni and Ma-mola that he was having a problem adjusting to the shift change which made him run late. Before this incident occurred he had asked for a shift change back to the second shift but had been ignored.
On cross examination he was asked questions regarding the documentation. He stated that the documents showed him as having unexcused absences for days which were really overtime days. On those days, he had informed his supervisor in advance ahead of time he would take his day off and not take the overtime. Overtime is not mandatory, but optional. However, if Pellerin really needs an employee then it is expected that person show up. He explained one incident in which he had made plans but his supervisor told him he was needed. On that occasion Jones suggested using another employee in his place and the supervisor agreed.
He disputed four days of unexcused absences noted in the documents due to the overtime situation. He admitted he failed to show to work on April 24, 1994. However, he stated he did not call because no one was at the plant that day, a Sunday. On the other hand, LaCoste testified that an employee can contact the supervisor through the paging system or leave a message on his recorder. There is a 24-hour line to the company. Jones admitted there was a beeper system but stated that the only number he had was an outdated one.
Jones also admitted that he overslept April 20,1994 and called in late.
He denied his supervisors had ever spoken to him before April 27, 1994 about any absence or tardiness.
HEARSAY EVIDENCE
Jones argues that the Board of Review’s findings are not supported by competent evidence since the Board considered hearsay evidence in reaching its conclusion.
Appellant argues that the ALJ implicitly relied on a pattern of absenteeism or tardiness reflected in purported personnel documents admitted into evidence. Although the ALJ focused on the undisputed May 2nd incident, he nonetheless also refers to the “document[ation of] lasóme incidents of absenteeism ...”
*1297 LaCoste, the custodian of these records, admitted he had no personal knowledge of the incidents reported nor did he prepare the documents.
The administrator argues these documents are business records, and an exception to hearsay is provided under La.Code Evid. art. 803(6). The employer contends the ALJ did not rely on the documents, and even if he did, Jones did not object and thereby waived his right to object on appeal.
We have previously addressed the issue in Dubois v. Louisiana Dept. Of Labor, Office of Employment Sec., 427 So.2d 645 (La.App. 5th Cir.1983). In Dubois we followed the rule that administrative findings be supported by competent evidence and not “secondhand or hearsay”. Id. at 647. The code of evidence recognizes a business records’ exception to hearsay. Here, as in Schlesinger v. Administrator of Office Employment Sec. Dept. Of Labor, 583 So.2d 100 (La.App. 3rd Cir.1991), we need not reach the implied argument that we now abandon the views we expressed in Dubois, supra.
In Schlesinger, supra, the third circuit noted that a consideration of the exception still warranted the conclusion personnel records were incompetent evidence where inter alia, “there was no testimony about where the records were kept and who had access to them.” Id. at 103. This is the case herein.
Furthermore, the third circuit explained in Lee v. Brown, 148 So.2d 321, 324 (La.App. 3rd Cir.1963):
The appeals referee and the administrative board found that the company produced ‘two witnesses and a signed document to prove that the claimant was intoxicated on the day he was discharged.’ The record indicates that one of the ‘witnesses’ was an executive of the company who had no personal knowledge of the incident and that the ‘signed document’, was a letter addressed to this executive signed by a co-employee stating that the claimant Vas drunk’ on the night of the alleged incident. This hearsay evidence and this ex parte document did not, of course, constitute evidence competent to prove the charged disqualification.
It is true that the statute provides that the ‘usual rules of evidence’ do not govern the admissibility of evidence at the administrative hearing. LSA-R.S. 23:1631. Nevertheless, although normally inadmissible evidence may be received at the hearing, the actual findings of the administrative agency that a claimant is disqualified from benefits must be supported by competent evidence. As stated at 81 C.J.S. Social Security and Public Welfare s 221, p. 318: ‘It is generally held that the ^decisions and findings of an administrative tribunal in unemployment compensation cases must be supported by competent evidence. The relaxation of the general rules of evidence does not mean that the administrative tribunal can treat as evidence matter which is not evidence and has no probative force, and it does not justify orders without a basis in evidence having rational probative force. Findings of fact supported only by incompetent or hearsay evidence are improper, and hearsay evidence will not be considered in determining whether the findings are supported by the evidence * * *.’
Additionally:
[t]he unemployment compensation act must be liberally interpreted and administered by the courts in line with its fundamental objective of relieving individual hardships and the economic loss to the community as a whole which result from the lack of income caused by unemployment [Citations omitted].
Immel v. Brown, 143 So.2d 156, 159 (La.App. 3rd Cir.1962).
We noted in Dubois, supra at 646:
Our judicial review, as provided in R.S. 23:1634 ... is confined to questions of law. The findings of the Board, as to the facts, if supported by sufficient evidence, and in the absence of fraud, are conclusive.
Accord, Taco Bell Corporation v. Perkins, 95-225 (La.App. 5th Cir. 9/26/95), 662 So.2d 34.
While we agree that some of the testimony and evidence was insufficient, we do find after, reviewing all of the testimony there was *1298 sufficient competent evidence to support the Board of Review’s factual conclusions. Jones admitted to one unreported absence. He stated the incident occurred on a Sunday when no one could be contacted. His testimony indicates he was aware of the beeper system referred to by LaCoste. He also admitted to two incidents of tardiness and a warning given prior to the last incident.
WILLFUL MISCONDUCT
We now turn to a consideration of whether the ALJ was legally correct in considering these incidents to constitute willful misconduct connected to the employment so as to disqualify Jones.
La.R.S. 23:1601(2)(a)[1] provides for disqualification of unemployment compensation | «benefits based on discharge for misconduct. Misconduct sufficient for disqualification must be intentional wrongdoing or willful disregard of the employer’s interests. Wood v. Louisiana Dept. Of Employment Sec., 25,545 (La.App. 2nd Cir. 2/23/94), 632 So.2d 899. Accord, Taco Bell Corporation, supra (interpreting the 1990 amendment to La.R.S. 23:1601(2)(a), also applicable herein). Misconduct is determined on a case by case basis. Taco Bell Corporation, supra.
We find the requisite intent for disqualification to be present. Jones’ admitted absence and two incidents of tardiness, one of which followed a warning, demonstrate intentional disregard for his employer’s interests in maintaining productivity.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED

. La.R.S. 23:1601 provides in part:
An individual shall be disqualified for benefits: * * * * * *
(2)(a) If the administrator finds that he has been discharged by a base period or subsequent employer for misconduct connected with his employment. Misconduct means mismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives or property of others, dishonesty, wrongdoing, violation of a law, or violation of a policy or rule adopted to insure orderly work or the safety of others ...