722 So.2d 1042 (1998)
Cheryl HARRIS
v.
Robin HOUSTON, Administrator of The Louisiana Office of Employment Security and Alton Ochsner Foundation.
No. 97-CA-2847
Court of Appeal of Louisiana, Fourth Circuit.
November 4, 1998.
*1043 R. Paul Tuttle, New Orleans Legal Assistance Corp., New Orleans, Louisiana, for Plaintiff/Appellant.
Cynthia T. Batiste, Louisiana Department of Labor, Office of Employment Security, Baton Rouge, Louisiana, for Defendant/Appellee.
Before WILLIAM H. BYRNES, ROBERT L. LOBRANO, JOAN BERNARD ARMSTRONG, MOON LANDRIEU and PATRICIA RIVET MURRAY, JJ.
ARMSTRONG Judge.
This is an unemployment compensation benefits case. The claimant was dismissed from her job as a result of several instances of arriving late for work and absence from work. The Administrator for the Office of Employment Security determined that the dismissal was a result of misconduct by the claimant so that the claimant is disqualified from receiving unemployment compensation benefits. The Administrator's decision was upheld in subsequent administrative appeal proceedings and upon judicial review in the trial court. The claimant brings the present appeal. Because the record contains no evidence of any intentional misconduct by the claimant, and, indeed, what evidence there is on the issue indicates that there was not any intentional misconduct by the claimant, we reverse the judgment below.
The claimant-appellant, Cheryl Harris, was employed for twelve years, at a modest wage, as a film librarian in the radiology department of Alton Ochsner Foundation. Ms. Harris was late to work, or absent from work, on a number of occasions in 1994, 1995 and 1996. Ochsner's records as to Ms. Harris' attendance, as summarized by Ms. Harris' supervisor at Ochsner, reflect the following:

1994
3/23 Left 2 hours early to take care of car
 problems
4/8 Left 3 hours early; daughter sick
5/2 Unscheduled absence; not feeling well
5/5 Late, 30 minutes
5/9 Late 1.5 hours; car trouble
7/1 Unscheduled absence; car trouble
8/10 Late, 30 minutes
11/17 Unscheduled absence; car trouble
12/9 Late, 10 minutes
12/12 Late 40 minutes, car trouble
1995
1/3 Late 10 minutes
1/5 Unscheduled absence; sick
1/10-4/10 Placed on 90 days probation for attendance/tardiness
 problems
3/21 Unscheduled absence; sick (on probation)
3/27 Late 30 minutes; traffic (on probation)
4/11 Late 2 hours; weather
12/6 Unscheduled absence; daughter sick
1996
1/11-1/12 Unscheduled absence; leg swollen
1/31 Late 20 minutes
2/22 Last chance agreement
9/19 Late 2 hours; daughter missed bus
9/23 Late 17 minutes
10/1 Late 15 minutes
10/8 Terminated due to attendance/tardiness
 problems

The above summary of Ms. Harris' attendance is not contested. It is also uncontested that Ms. Harris always called in properly to let Ochsner know when she would be late or absent. Nor have any of Ms. Harris' explanations *1044 for lateness or absence been disputed either below or on this appeal.
Thus, over a period of 33 months (about 660 work days) Ms. Harris (A) was absent 8 days, (B) late on 12 days for a total lateness of 8 hours and 52 minutes, and (C) left early on 2 days for a total of 5 hours missed by early departure. It also appears from Ochsner's records that the explanations given for most of Ms. Harris' lateness and absences were illness, car trouble and illness of her daughter. At the evidentiary hearing below, Ms. Harris testified as to her own illness, problems with her car which she had to use to commute from her home in New Orleans East to Ochsner, which is located to the west of New Orleans, and the fact that she was divorced and had to care for her daughter as a single parent. There was also some evidence that Ms. Harris had been late and/or absent on days during 1987, 1988, 1990 and 1991 but this evidence was general and those years were remote from the October 1996 termination of Ms. Harris. A number of written annual employee evaluations of Ms. Harris were introduced into evidence and all reflect that, with the exception of attendance, Ms. Harris was given favorable ratings.
The disqualification of an employee for unemployment compensation benefits, by reason of the employee's misconduct, is provided for by statute:
An individual shall be disqualified for benefits:
* * *
(2)(a) If the administrator finds that he has been discharged by a base period or subsequent employer for misconduct connected with his employment. Misconduct means mismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives or property of others, dishonesty, wrongdoing, violation of a law, or violation of a policy or rule adopted to insure orderly work or the safety of others.
La. R.S. 23:1601(2)(a).
The statutory provision for disqualification by reason of misconduct has been the subject of important judicial gloss which requires intentional misconduct in order for there to be a disqualification. "The word `misconduct' in LSA-R.S. 23:1601 is used to connote intentional wrongdoing." Banks v. Administrator of the Dept. of Employment Security, 393 So.2d 696, 699 (La.1981). Accord Price v. Blache, 560 So.2d 635, 636-37 (La.App. 4th Cir.1990).
For a claimant to be disqualified from benefits because of "misconduct connected with his employment" under La. R.S. 23:1601(2), the "misconduct" must have resulted from willful or wanton disregard of the employer's interest, from a deliberate violation of the employer's rules, or from a direct disregard of standards of behavior which the employer has the right to expect from his employees. Pilgrim Manor Nursing Home, Inc. v. Gerace, 337 So.2d 660 (La.App. 3rd Cir.1976). The type of behavior which is considered "willful misconduct" is intentional wrong behavior. Banks v. Administrator of Employment Security, 393 So.2d 696 (La.1981). Because of the beneficial purpose of unemployment compensation, the term "misconduct" should be construed so as to favor the awarding of benefits rather than disqualification.
Charbonnet v. Gerace, 457 So.2d 676, 678 (La.1984). Accord Holtry v. Truly, 94-1348 (La.App. 4 Cir. 12/15/94), 647 So.2d 1335, 1338; Brister v. Whitfield, 522 So.2d 1254, 1256 (La.App. 4th Cir.1988).
Absence from work, particularly when unexplained or when the employee fails to call in to report that he or she will be absent, can occur under circumstances such that it amounts to intentional misconduct resulting in disqualification for unemployment benefits. See Gastinell v. Lockwood, 393 So.2d 907 (La.App. 4th Cir.1981) (employee absent for extended period without notice and failure to contact employer as required by employer's policy); White v. Gerace, 372 So.2d 756 (La.App. 4th Cir.1979) (absent employee failed to give notice to or contact employer in violation of employer's rules). But, even repeated absences, under circumstances not amounting to intentional misconduct, will not result in disqualification for unemployment benefits. See Banks v. Administrator *1045 of Dept. of Employment Security, 393 So.2d 696 (La.1981) (employer notified when employee would be absent and absences due to employee's illness or illness in employee's family); Price v. Blache, 560 So.2d 635 (La.App. 4th Cir.1990) (employee's lengthy absence from work was due to illness and employee attempted to provide employer with medical documentation of her illness); Cabezas v. Administrator, Div. of Employment Security, 557 So.2d 985 (La.App. 4th Cir.1990) (employee made good faith effort to report that he would be absent although failed to follow employer's rules regarding reporting of absences). Similarly, lateness to work, particularly without a reasonable excuse, can occur under circumstances that amount to intentional misconduct resulting in disqualification for unemployment compensation benefits. See Holtry v. Truly, 94-1348 (La.App. 4 Cir. 12/15/94), 647 So.2d 1335 (employee's only excuse for frequent lateness to work, trains on track in front of employer's premises, was rebutted by employer because all 24 other employees crossed same track and got to work timely); Butler v. Gerace, 506 So.2d 619 (La.App. 4th Cir.1987) (on-call health care technician's purposefully traveling beyond distance at which he could timely respond to page caused harm to patient). But, even repeated lateness to work, under circumstances not amounting to intentional misconduct, will not result in disqualification for unemployment compensation benefits. See Brister v. Whitfield, 522 So.2d 1254 (La.App. 4th Cir.1988) (employee was late to work because he had two full time jobs and commuted using public transportation which facts were known to employer at the time of hiring).
Judicial review of the findings of fact made in the administrative proceedings in unemployment compensation cases "is limited to first, determination of whether the [findings of] facts are supported by competent evidence, and, second, whether the facts, as a matter of law justify the action taken." Butler v. Gerace, 506 So.2d 619 (La. App 4th Cir.1987). See also Charbonnet v. Gerace, 457 So.2d 676, 679 (La.1984); La. R.S. 23:1634(B). In cases of alleged disqualifying employee misconduct, the burden of proof as to such misconduct is upon the employer and the misconduct must be proven by a preponderance of the evidence. Charbonnet v. Gerace, 457 So.2d 676, 679 (La.1984); Brister v. Whitfield, 522 So.2d 1254, 1256 (La.App. 4th Cir.1988). See also Banks v. Administrator of Dept. of Employment Security, 393 So.2d 696, 699 (La.1981).
In the present case, the facts as to Ms. Harris' absences from and lateness to work, as summarized above, are not in dispute. Thus, the issue becomes whether, based upon those facts, Ms. Harris' absences and lateness amounted to intentional misconduct. We acknowledge that it was "against the best interests of the employer," Ochsner, for Ms. Harris to be absent from or late to work and, indeed, employee absence or lateness will almost invariably be against the best interests of the employer. However, employee conduct which is against the best interest of the employer, but which is not intentional, is not disqualifying misconduct. We also acknowledge that Ms. Harris' absences and lateness were repeated and that she was sternly warned by Ochsner that her lateness and absences were unacceptable. However, in the absence of any evidence at all that Ms. Harris' absences and lateness were intentional, the facts that the absences and lateness were repeated and that Ms. Harris had been warned do not, in themselves, render the absences and lateness disqualifying misconduct. Certainly the number of absences or incidents of lateness over the time period involved, i.e. the frequency, could be so great as to contribute to the conclusion that the absences and lateness were intentional and that would be particularly so when no reasonable, credible explanation was given for the absences and lateness. But, in the present case, Ms. Harris' absences and lateness, summarized above, were not extremely frequent and most were given reasonable explanations which are not disputed. All of the evidence points to the conclusion that most of Ms. Harris' attendance problems, which were not extremely frequent, were caused by health problems, by her having an unreliable car and a long commute and by her being a single parent with a young child. There is neither any direct evidence that Ms. Harris' absences or lateness *1046 were intentional nor any circumstantial evidence from which such intent could be inferred.
It may be that Ochsner needed better attendance at work than Ms. Harris was able to provide and, in any case, it is not our place to second-guest Ochsner in that regard. But, whatever the soundness of Ochsner's decision to dismiss Ms. Harris, her inability to meet Ochsner's attendance requirements does not amount to intentional misconduct that disqualifies her from receiving unemployment compensation benefits.
For the foregoing reasons, the judgment below is reversed.
REVERSED.
BYRNES, J., concurs with reasons.
LANDRIEU, J., dissents.
BYRNES, J., concurring with reasons.
I respectfully concur. Banks v. Administrator of the Dept. of Employment Security, 393 So.2d 696, 699 (La.1981), cited by the majority defines LSA-R.S. 23:1601(2)(a) "misconduct" as intentional wrongdoing. Price v. Blache, 560 So.2d 635, 636, also cited by the majority, defines LSA-R.S. 23:1601(2) "misconduct" as "willful or wanton." At the time Banks and Price were decided the term "misconduct" was undefined in LSA-R.S. 23:1601(2). This left the field wide open (within reason) for the courts to put their gloss on the term. However, LSA-R.S. 23:1601(2)(a) was amended by Act 750 of 1990 which for the first time defined "misconduct" and that definition includes no reference to intentionality, willfulness or wantonness. As the legislature is well acquainted with the term "intentional" as well as the related terms, "willful" and "wanton", it is difficult to believe it was through mere oversight that the legislature failed to use any of these or equivalent terms in its statutory definition of misconduct. Accordingly, I would normally take the position that when the legislature defined "misconduct" in Act 750 of 1990 it had the effect of supplanting the jurisprudentially created definition of Banks, Price, and similar cases.
However, this Court in Emke v. Mouton, 617 So.2d 31, 33 (La.App. 4 Cir.1993) stated: This definition of "misconduct", which requires either intentional wrongdoing or negligence to such an extent as to manifest culpability, has been applied by the Second Circuit in interpreting the statute as amended in 1990. Hardeman v. Blache, 605 So.2d 671 (La.App. 2d Cir.1992). We agree with the Second Circuit and apply the well established definition of misconduct. [Emphasis added.]
Although Hardeman, supra, upon which Emke relies, quotes LSA-R.S. 1601(2)(a) as amended, it fails to note the fact that it was amended and relies for authority on cases based on pre-amendment law. Even Settoon v. Berg, 577 So.2d 338, 340 (La.App. 1 Cir. 1991), cited in Hardeman, was based on a discharge that occurred in 1988, i.e., under the old law. In a manner reminiscent of Hardeman, Wood v. Dept. of Employment Sec., 25,545 (La.App. 2 Cir. 2/23/94); 632 So.2d 899, 901, quotes the language of the statute as amended, but relies on pre-amendment authorities and fails to note that an amendment was made. Gobert v. Louisiana Dept. of Emp. Sec., 94-1018, p. 4 (La.App. 3 Cir. 3/8/95); 651 So.2d 508, 511 relies on Wood, Hardeman, and Emke, and likewise fails to note that the legislature had amended the statute to define the term "misconduct." Thus, of all the cases decided since Act 750 of 1990 took effect, only Emke takes cognizance of the amendment, but Emke makes no attempt to consider why the legislature made the amendment, preferring to rely entirely on Hardeman. Unfortunately, Hardeman quotes the law as amended, but makes no mention of the amendment, relies entirely on pre-amendment discharges and cases, and does not seem to realize that the law reads the way it does because of an amendment. It is obvious that Hardeman overlooked the fact that a change in the law had occurred and this oversight was perpetuated by this Court when it accepted Hardeman as the basis for Emke.
There is also a line of post-amendment cases that are even less persuasive than those considered above because they not only fail to note that an amendment was made in 1990, and, therefore, fail to consider the legislative *1047 intent in making the amendment, as is the problem with the cases considered above, they do not even quote the statute as amended. These cases all rely on preamendment cases, or on cases that rely on such cases which is effectively the same thing, or on Wood, Hardeman, Gobert, Taco Bell Corporation v. Perkins, 95-225 (La.App. 5th Cir. 9/26/95); 662 So.2d 34, or Emke, supra, without examining the statutory definition and the legislative intent of the amendment. See, Exxon Pipeline Co. v. Dugas,[1] 97-1129, p. 3 (La.App. 3 Cir. 2/18/98); 707 So.2d 1035, 1036; Savoie v. Labove,[2] 96-952, p. 6 (La.App. 3 Cir. 3/5/97); 692 So.2d 626, 629; Bean Dredging Corp. v. Administrator, Div. of Employment Sec., Dept. of Labor,[3] 96-76, p. 4 (La.App. 3 Cir. 8/28/96); 679 So.2d 1019, 1022, writ not considered 96-2492 (La.11/15/96); 682 So.2d 750; Victor v. Administrator, Office of Employment Sec.,[4] 96-251, p. 6 (La.App. 3 Cir. 6/26/96); 676 So.2d 1123, 1127; Jones v. Truly,[5] 95-848, p. 8 (La.App. 5 Cir. 2/14/96); 670 So.2d 1294, 1298, writ denied 96-0648 (La.5/3/96); 672 So.2d 697; Jeanette Mills, Inc. v. Matthews,[6] 93-1420, p. 3 (La.App. 3 Cir. 6/1/94); 640 So.2d 653, 655; Toney v. Francis,[7] 618 So.2d 597, 599 (La.App. 2 Cir.1993); Operators, Inc. v. Comeaux,[8] 579 So.2d 1228, 1230 (La. App. 3 Cir.1991); Martin Mills, Inc. v. Leon,[9] 576 So.2d 1165, 1167 (La.App. 3 Cir. 1991).
Thus, of those cases that have noted the 1990 amendment, none have independently considered why in 1990 the legislative decided to define the previously undefined term, "misconduct." No case to date has addressed the legislative intent of the 1990 amendment, or explained why we should read such concepts as intentionality, willfulness and wantonness into the definition of misconduct when the legislature did not do so. Only recently in Ruiz v. Oniate, 97-2412, p. 4 (La.5/19/1998); 713 So.2d 442, 444, the Louisiana Supreme Court took the opportunity to remind this Court that the "interpretation of a law involves primarily the search for the legislative intent."
Based on the foregoing analysis, I would ordinarily join Judge Landrieu's dissent from which I infer, in the absence of written reasons, a similar dissatisfaction with the majority's application of the statute. However, as Emke has pre-empted this area of the law as far as this Circuit is concerned, I feel compelled to concur, albeit reluctantly, unless and until Emke is overruled. I am forced to conclude that the majority opinion correctly states the facts and the current law of this Circuit applicable to this case. The Supreme Court has never addressed this issue. Pursuant to Ruiz v. Oniate, supra, perhaps it is time that it does so.
NOTES
[1] Exxon Pipeline cites Hardeman, supra, and Lacy v. PPG Industries, Inc., 93-1588 (La.App. 3 Cir. 6/1/94); 640 So.2d 655 along with the statement that Lacy relied on Hardeman. The reference to Lacy in Exxon Pipeline is in error. Contrary to the statement made by the court in Exxon Pipeline, there is no citation to Hardeman in Lacy. The reason for this is that Lacy is not an unemployment compensation case at all. I can only assume that when the Exxon Pipeline court cited Lacy it actually meant to cite some other case, most likely Jeanerette Mills, infra, which immediately precedes Lacy at 640 So.2d 653.
[2] Savoie relies on Gobert, supra, and Operators, Inc., infra, as well as two pre-amendment cases.
[3] The sole authority relied on in Bean Dredging is one pre-amendment case.
[4] Victor relies on two pre-amendment cases.
[5] Jones cites Wood and Taco Bell.
[6] Jeanerette Mills cites only Operators, Inc., infra. Operators, Inc. concerns a discharge that took place almost four years prior to the effective date of Act 750 of 1990 and is based entirely on preamendment cases.
[7] The sole authority on which Toney is based is one pre-amendment case, Jackson v. Administrator, 511 So.2d 1309 (La.App. 2 Cir.1987).
[8] Operators, Inc., is the case perhaps most often cited for the proposition that the conduct must be "willful or wanton." But the discharge before the Operators, Inc. court occurred almost four years prior to the effective date of Act 750 of 1990 and is based entirely on pre-amendment cases.
[9] The discharge in Martin Mills occurred almost two years prior to the effective date of Act 750 of 1990. It relies entirely on pre-amendment cases.