JjJudge MIRIAM G. WALTZER.
STATEMENT OF THE CASE
Nicole Farrell sued her employer, American Heavy Lift Shipping (American) and the Secretary of the Louisiana Labor Department seeking judicial review of the denial of her claim for unemployment compensation benefits.
Farrell claimed she was employed by American as an able-bodied seaman and was laid off on 22 January 2000. The Appeals Tribunal for the Office of Regulatory Services heard the matter by telephone conference on 4 May 2000. On 23 June 2000, the Board of Review for the Office of Regulatory Services, Louisiana Department of Labor affirmed the denial of Farrell’s claim. She amended her claim to assert a claim that the unemployment insurance statute, LSA-R.S. 23:1601, is unconstitutional, and requested the trial court to provide statutory notice of the constitutional issue to the Louisiana Attorney General. American filed a formal objection to the amendment; however, on 6 December 2000, the trial court granted leave to amend.
| ¡American filed affirmative defenses that the petition does not state grounds for judicial review as required by LSA-R.S. 23:1634; exceptions of vagueness and failure to state a cause of action against American and an answer. American contended that the petition was frivolous; that Farrell is a member of the International Organization of Masters, Mates and Pilots; that pursuant to the contract between the Union and American, American paid vacation benefits to the union on Farrell’s behalf covering the period 23 January 2000 through 28 March 2000 in the amount of $4,541.81; that Farrell is precluded from receiving unemployment benefits pursuant to LSA-R.S. 23:1601(l)(a) because she was voluntarily unemployed under the collective bargaining agreement negotiated by the Union on Farrell’s behalf; Farrell is further precluded from receiving benefits pursuant to LSA-R.S. 23:1601(7)(d) because she received vacation benefits during her days off, under the terms of the agreement with the Union.
The Administrator of the Louisiana Department of Labor filed an answer together with a certified copy of the administrative record in accordance with LSA-R.S. 23:1634. The answer notes that this Court’s jurisdiction is limited by LSA-R.S. 23:1634 to questions of law only, and that the facts found by the Board must be accepted if supported by sufficient evidence and in the absence of fraud.
The matter was heard on 2 February 2001, following which the trial court rendered judgment on 8 February 2001 affirming the decision of the Louisiana Department of Labor’s Board of Review. Farrell appeals from that judgment. We affirm.
^STATEMENT OF FACTS
The Administrative Law Judge found that Farrell was last employed by American from 21 September 1999 to 22 January *339 2000 as an able-bodied seaman. She is a member of the International Organization of Masters, Mates, and Pilots. Farrell earned vacation pay, under the terms of a Union contract, while she was working on her ship.
Farrell completed 124 days of work during her last hitch, at a base rate of $68.68 per day. She accrued 66 days of vacation pay during that hitch and elected to receive the vacation pay after she completed her last assignment. She received 66 days of vacation pay in a lump sum payment of $4,541.81, which covered the period from 23 January 2000 to 28 March 2000.
On claimant’s 6 February 2000 claim for unemployment benefits, the Administrative Law Judge found that Farrell was eligible to receive $230 per week in benefits. Her vacation pay, when prorated, was in excess of that weekly benefit amount for each of the weeks during the period from 6 February 2000 to 1 April 2000.
Farrell does not contend on this appeal that the findings of the Administrative Law Judge were manifestly erroneous and our review of the record convinces us that they are supported by the evidence presented at the administrative hearing.
STANDARD OF REVIEW
| ¿Judicial review of the findings of fact made in the administrative proceedings in unemployment compensation cases is limited to first, determination of whether the findings of fact are supported by competent evidence and, second, whether the facts, as a matter of law, justify the action taken. Harris v. Houston, 97-2847 p. 6 (La.App. 4 Cir. 11/4/98), 722 So.2d 1042, 1045, citing Butler v. Gerace, 506 So.2d 619 (La.App. 4 Cir.1987).
FIRST ASSIGNMENT OF ERROR: The trial court improperly interpreted LSA-R.S. 23:1601.
The interpretation of a law involves primarily the search for the legislative intent. Ruiz v. Oniate, 97-2412, p. 4 (La.5/19/98), 713 So.2d 442, 444. However, where the terms of a statute are unambiguous and do not lead to absurd results, the statute should be interpreted according to its terms.
The Louisiana Unemployment Compensation Law provides in LSA-R.S. 23:1601(7) that an employee shall be disqualified for benefits for any week with respect to which he is receiving or has received remuneration in the form . of wages in lieu of notice, disability compensation, and payments under a retirement or pension plan, system or policy, and towards the cost of which a base period employer is contributing or has contributed, or by the entire prorated weekly amount of any pension, retirement or retired pay, annuity or other similar payment based on any previous work if reduction is required as a condition for full tax | ficredit against the Federal Unemployment Tax. LSA-R.S. 23:7(d) provides in pertinent part:
(i) For purposes of this Section, whenever the employer or employing unit, or his designated representative, or any vacation plan or any dismissal plan makes a payment or payments, or holds ready to make such payment to an individual as vacation pay, or as a vacation pay allowance, or as pay in lieu of vacation, or dismissal pay, or severance pay, such payment shall be deemed “wages” as defined in Section 1472(20)(A) prorated for the period of time which it would have taken such individual to earn such remuneration during the employment in which such payments accrued, excluding any overtime payments.
(ii) During a period of temporary layoff for the purpose of this Subpara-graph, when an agreement between the *340 employer and a bargaining unit representative does not allocate vacation pay allowance or pay in lieu of vacation to a specified period of time, the payment by the employer or his designated representative will be deemed to be “wages” as defined in Section 1472(20)(A) in the week or weeks the vacation is actually taken.
We find no ambiguity in the statutory language.
Farrell contends that this statute requires the Labor Department to inquire into the status of a claimant at the time he applies for unemployment benefits. If the claimant is on vacation at that time, according to Farrell’s interpretation, then the unemployment benefit is offset by the vacation benefit. However, if the claimant is laid off at that time, the unemployment benefits are not offset and the vacation benefits are considered wages within the meaning of the statute only in the week or weeks in which the vacation is actually taken.
| fiThis distinction is important in Farrell’s case, because during her layoff she had registered with her hiring hall and actively seeking work. A handwritten memorandum from Farrell contained in the record notes:
I wanted to let you know that I attended training to further my career opportunities and advance my maritime education. I got an FCC license, GMDSS certification, & HWA certification, this took 3 weeks. During those 3 weeks I was still available for work and looking. I did work that 3rd week, but there was no work during the other 2 weeks.
According to Farrell’s signed statement of separation dated 7 February 2000, she was no longer employed because of lack of work, and was discharged at the end of her assignment because she had completed the assignment. Similarly, the employer’s statement showed the reason for separation as “completed job.” Clearly, the provision of LSA-R.S. 23:1601(7)(d)(ii), which apply only in the context of a temporary layoff, is inapplicable to Farrell’s claim.
Vacation pay was stated as $4,541.81 for the period from 23 January to 28 March 2000. Although Farrell tried at various times during the course of this litigation to characterize the vacation benefit plan as a “deferred savings plan,” a position specifically rejected by this Court in Verbois v. Houston, 2000-0874 (La.App. 4 Cir. 2/21/2001), 784 So.2d 12. That position appears to have been abandoned on appeal. Clearly, the $4,541.81 sum represented vacation benefits payable pursuant to the union contract. The adjudication justification summary of the claims specialist, dated 29 March 2000, recites:
Employer stated claimant was paid $4541.81 in vacation pay covering the J^eriod 01/23/00 to 03/28/00. LDW: 01/22/00. Claimant stated she did receive $4541.81 in vacation pay covering the period 01/23/00 to 03/28/00. LDW: 01/22/00 Claimant further stated this payment was not to be considered vacation pay based on a recent court ruling in Louisiana.
The court ruling referred to in that document and relied on by Farrell in her administrative proceeding was the judgment rendered 20 December 1999 of the Civil District Court for the Parish of Orleans in Verbois v. Chris Houston, Secretary of Labor, case number 99-2568. This Court reversed that judgment in Verbois v. Houston, supra. The facts of that case are substantially identical to those of the instant case: a merchant seaman employed pursuant to a union contract making the same type of claim as to vacation benefits and advancing Farrell’s interpretation of LSA-R.S. 23:1601(7)(d). Indeed, *341 the facts were so similar that Farrell relied on the district court judgment in the case during her administrative appeal. In Verbois, we held:
The sole issue raised by the appeal, therefore, is whether the payment by the Plan, rather than by an employer, pursuant to a collective bargaining agreement is within the ambit of R.S. 23:1601(7)(d)(i). That statute provides: [the text of the statute is quoted].
There are no Louisiana cases that address this issue, and none of the cases cited by either party is particularly helpful in answering the question. Nor do we find the decisions of the New Jersey Board of Review, which rely on case law of that state interpreting a statute that differs significantly from R.S. 23:1601(7)(d), included in the record, persuasive.
In support of the legal conclusion that R.S. 23:1601(7)(d) was not intended to apply to this payment, Mr. Verbois points out that the comments to the statute reflect that the legislature intended that vacation allowance paid pursuant to a collective bargaining agreement should not be treated as wages.
| sIt is correct that Act 554 of 1990, which amended R.S. 23:1601, originated as Senate Bill 801 and was titled “Unemployment benefits — treatment of vacation allowance pursuant to collective bargaining agreement.” It is also correct that the preamble to the bill provided that it was:
AN ACT to amend and reenact R.S. 23:1601(7)(d), relative to unemployment benefits; to provide that vacation allowance pursuant to a collective bargaining agreement shall not be treated as wages; and to provide for related matters.
The preamble of a legislative act, however, is not part of the law and it cannot be used to discern the legislature’s intent if no debt exists as to a statute’s meaning. State v. Barbier, 98-2923, p. 5 (La.9/8/99), 743 So.2d 1236, 1239.
Although it appears from the title and preamble of the bill that its author intended that vacation allowance pursuant to collective bargaining agreements should not be treated as wages, the statute that was enacted does not evidence that intent. R.S. 23:1601(7)(d)(i) explicitly, unequivocally, and unambiguously provides that vacation pay allowance, or pay in lieu of vacation, paid by any vacation plan is deemed wages for purposes of unemployment benefits. It makes no exception for payments made pursuant to collective bargaining agreements. The statute, as written applies to payments such as that made from the Seafarers’ Vacation Plan to Mr. Verbois
[[Image here]]
Farrell contends that Verbois did not raise the issue of whether the statute provides for differential treatment of vacation paid when the claimant is actually laid off. However, we note that Verbois, like Farrell, had ended his contractual hitch with his employer when he claimed benefits under LSA-R.S. 23:1601 et seq. We find that our previous holding is controlling in the instant case, and we are not persuaded by Farrell’s argument that we should revisit that holding.
| aFurthermore, the statute does not require that a claimant be actually and intentionally taking a vacation during the time he receives his vacation benefit. His vacationing or study or seeking work does not change the statutory character of the benefit as a vacation benefit. As such, under the unambiguous and specific terms of the statute, the vacation benefit is prorated for the period of time which it would have taken claimant to earn the remuneration *342 during the employment in which the benefit payments accrued.
For the foregoing reasons, this assignment of error is without merit.
SECOND ASSIGNMENT OF ERROR: As interpreted by the trial court, LSA-R.S. 23:1601(7) is unconstitutional and in violation of Article 3, Section 15 of the Louisiana Constitution of 1974.
The constitutional provision at issue herein, La. Const, of 1974, Art. Ill, Sec. 15(A) recites in pertinent part:
Introduction; Title; Single Object; Public Meetings. ... Every bill shall contain a brief title indicative of its object.
The purpose of this constitutional requirement is to give notice of the act’s intent and to prevent surprise and fraud upon members of the legislature and those who are interested or would be affected. Airey v. Tugwell, 197 La. 982, 3 So.2d 99 (1941); Terrytown Fifth Dist. Volunteer Fire Dept. Inc. v. Wilcox, 97-322 (La.App. 5 Cir. 1/14/98), 707 So.2d 449. Farrell contends that the “legislature was surely duped in 1990”. However, it is clear that the statute reenacted the disqualification of vacation, severance and dismissal pay in section (7)(d)(i), and 1 incarved out a narrow exception to the general rule in section (7)(d)(ii). The act’s title addresses the exception, but fails to point out its narrow application. We cannot say that this makes the act unconstitutional. Farrell has failed to demonstrate that the Legislature, in enacting this statute, intended to exempt all vacation benefits paid under any collective bargaining agreement. The mere fact that the act is not as broad in its scope as Farrell would like does not rise to constitutional dimensions.
Louisiana courts do not likely consider constitutional challenges to enactments of the Louisiana Legislature. We approach such review by affording the legislation an initial measure of deference by allowing questionable legislative acts a presumption of constitutionality, which may be turned back by a plaintiffs showing of specific constitutional infirmities. Perschall v. State, 96-0322 p. 28 (La.7/1/97), 697 So.2d 240, 259. Farrell has failed to make such a showing.
We also note that a fair reading of the title in conjunction with the body of the act does not show that incongruous and unrelated matters were joined, as prohibited by the holding in Doherty v. Calcasieu Parish School Board, 634 So.2d 1172 (La.1994).
This assignment of error is without merit.
THIRD ASSIGNMENT OF ERROR: The trial decision is at odds with controlling federal precedent in this area of law pre-empted by ERISA and the National Labor Relations Act.
Before we address Farrell’s contention that the administrative decision conflicts with controlling federal precedent, we must address the threshold issue of | n whether this area of law is pre-empted by the federal Employee Retirement Income Security Act (ERISA), 29 U.S.C.A. 1144(a). That section provides in pertinent part that ERISA shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in 29 U.S.C.A. 1002(a). The parties agree that the union plan is covered by ERISA. In 29 U.S.C.A. 114(c)(2), the act refers to state actors which purport to regulate, directly or indirectly, the terms of covered employee benefit plans. The preemption issue involves a dual analysis, set forth in Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). That case involved two private pension plans, both of which provided that an employee’s retirement benefits would be off *343 set by the amount of workers’ compensation awards for which he was eligible. The New Jersey legislature amended its Workers’ Compensation Act expressly to prohibit such offsets. Plaintiffs sued their employers, alleging the plans violated the New Jersey law. The Supreme Court held that the offset provisions of the pension plans did not constitute a prohibited “forfeiture” of vested benefits.
The court noted that analysis of the preemption issue must be guided by respect for the separate spheres of governmental authority preserved in the federal system.
Although the Supremacy Clause invalidates state laws that “interfere with, or are contrary to the laws of Congress ...,” the “ ‘exercise of federal supremacy is not lightly to be presumed.’ ” As we recently reiterated “[preemption of state law by federal statute or regulation is not favored ‘in the absence of persuasive reasons — either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.’ ” [Citations omitted.] 451 U.S. at 522, 101 S.Ct. at 1905.
liJn adopting ERISA, the Congress explicitly imposed a preemptive effect in 29 U.S.C.A. 1144(a):
The provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.
In reaching its conclusion that the New Jersey statute forbidding offsets was preempted by ERISA, the Supreme Court first determined that the New Jersey law “related to” the Plan, and then determined that it “purports to regulate, directly or indirectly” the terms of the plan.
In the instant case, we find neither state law relation to nor regulation of the collectively bargained plan. The statutory set-off is analogous to the pro-rata offset for payments made to disabled employees under the Louisiana workers’ compensation laws. In Martco Partnership v. Lincoln National Life Ins. Co., 86 F.3d 459 (C.A.5 (La.) 1996), the court held that this statutory workers’ compensation setoff did not “relate to” the underlying ERISA plan and did not modify or regulate the plan. The offset provisions of the state statute were found to have addressed only the means by which the employer’s obligation to the employee was to be determined.
A similar result obtained in Hewlett-Packard Company v. Diringer, 42 F.Supp.2d 1038 (D.Colo.1999) in which the court found provisions of the Colorado compensation act requiring employers to include the value of ERISA-qualified plan benefits in calculating employees’ compensation benefits was not preempted by federal law. The Diringer court’s analysis found that the requirement 11sproduces only an indirect economic impact on plan participants, and thus does not relate to the ERISA plan.
Likewise, the California prevailing wage law was held not to relate to ERISA plans in California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc., 519 U.S. 316, 324-25, 117 S.Ct. 832, 837-38, 136 L.Ed.2d 791 (1997). That opinion considered the California statute against the background of ERISA jurisprudence.
Since shortly after its enactment, we have endeavored with some regularity to interpret and apply the “unhelpful text” of ERISA’s pre-emption provision. We have long acknowledged that ERISA’s pre-emption provision is “clearly expansive.” It has “a ‘broad scope,’ and ... it *344 is ‘broadly worded,’, ‘deliberately expansive,’ and ‘conspicuous for its breadth.’ ” [Citations omitted.]
Our efforts at applying the provision have yielded a two-part inquiry: A “law ‘relate[s] to’ a covered employee benefit plan for purposes of § 514(a) ‘if it [1] has a connection with or [2] reference to such a plan.’ ” Under the latter inquiry, we have held pre-empted a law that “impos[ed] requirements by reference to [ERISA] covered programs,” a law that specifically exempted ERISA plans from an otherwise generally applicable garnishment provisions; and a common-law cause of action premised on the existence of an ERISA plan. Where a State’s law acts immediately and exclusively upon ERISA plans, ..., or where the existence of ERISA plans is essential to the law’s operation, ... that “reference will result in pre-emption.[”] [Citations omitted.]
A law that does not refer to ERISA plans may yet be pre-empted if it has a “connection with” ERISA plans.... [W]e recognized that an “uncritical literalism” in applying this standard offered scant utility in determining Congress’ intent as to the extent of § 514(a)’s reach. Rather, to determine whether a state law has the forbidden connection, we look both to “the objectives of the ERISA statute as a guide to the scope of the state law | uthat Congress understood would survive,” as well as to the nature of the effect of the state law on ERISA plans. [Citations omitted.]
As is always the case in our preemption jurisprudence, where “federal law is said to bar state action in fields of traditional state regulation, ... we have worked on the ‘assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.’ ” [Citations omitted.]
The Supreme Court found the statute functioned irrespective of the existence of an ERISA plan and, therefore, like the Louisiana statute in question in the instant case, does not make reference to ERISA plans.
The court then determined that the statute had no “connection with” ERISA plans, finding that the prevailing wage legislation was, like the vacation benefits offset at issue in the instant case, remote from the areas with which ERISA is expressly concerned, that is, reporting, disclosure, fiduciary responsibility and the like. See also, New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995).
Because the Louisiana statute does not relate to or seek to regulate ERISA plans in anything more than the way in which laws of general application would affect citizens in their dealings with one another, we conclude that the Louisiana statute is not pre-empted by ERISA. As the Supreme Court noted in the Dillingham case, “We could not hold pre-empted a state law in an area of traditional state regulation based on so tenuous a relation without doing grave violence to our presumption that Congress intended nothing of the sort.” 519 U.S. at 334, 117 S.Ct. at 842.
This assignment of error is without merit.
^CONCLUSION AND DECREE
For the foregoing reasons, we affirm the judgment of the lower court and assess costs of this appeal to appellants.
AFFIRMED.